IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                                            19-CR-7-LJV

SACHIN AJI BHASKAR,

                Defendant.

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this response to Defendant's sentencing memorandum. Dkt. 57.

## PRELIMINARY STATEMENT

On March 5, 2020, the defendant, SACHIN AJI BHASKAR ("BHASKAR"), appeared before this Court and pleaded guilty to the Indictment without benefit of a plea agreement. The one-count Indictment charged a violation of Title 18, United States Code, Section 2422(b) [sexual enticement of a minor]. The Presentence Report (PSR) determined that BHASKAR, with a total adjusted combined offense level of 43 and criminal history category of I faces a guideline range of life imprisonment. PSR ¶¶ 41, 47. This memorandum is submitted in opposition to defendant's request for a non-guideline sentence of 10 years imprisonment and in support of a sentence of 30 years imprisonment.

**STATEMENT OF FACTS**

The government concurs with and relies on the statement of facts outlined in the PSR at paragraphs 8 through 24.

**DISCUSSION**

I.   **In Considering the §3553(a) Factors, this Court Should Conclude That a Sentence of 30 Years Imprisonment Provides the Proper Punishment for the Offense of Conviction**

The United States recognizes that since United States v. Booker, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines, but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). The United States contends the a sentence of 30 years imprisonment, which is below the advisory guideline range, is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. See United States v. Rattoballi, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress .... It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider."). The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been

2

found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A court that imposes a sentence outside the applicable advisory guidelines range must do so on notice to the parties and must state "with specificity" both at sentencing and in the written judgment and commitment order its reasons for doing so. 18 U.S.C. § 3553(c).

While BHASKAR now requests the minimum possible sentence of imprisonment, the government objects to such a sentence as unreasonable given the § 3553(a) factors, as set forth below.

    A.    <u>History and Characteristics of the Defendant Warrant A Substantial Term of Incarceration</u>

BHASKAR asks this Court to "consider, among other factors, his personal background and characteristics in determining an appropriate sentence." Dkt. 57 at 2. In discussing his personal history and characteristics, BHASKAR laments his tortured life in the United States and the loneliness that resulted from cultural isolation. However, it is difficult to determine how much of his background actually is true, as little of it can be corroborated or refuted. What is true is that BHASKAR was a bright student and attended a terrific school. The government has no reason to dispute that he was the President of the *Penn State Pingers Toastmasters Club* and that he participated in many student groups/clubs while at Penn State, including: *THON; Advanced Vehicle Team; and Phi Eta Sigma Honors Society*. It is also true that when BHASKAR graduated from Penn State, he immediately was hired as an engineer by *Calspan*.

BHASKAR has enjoyed great academic success, participated in all sorts of school clubs and activities, traveled the world, and was at the beginning of what appeared to be a promising career as an engineer. He had the world at his feet and despite all his successes, BHASKAR chose to abandon any morals that he may have possessed to manipulate a child to have sex with him. He now seeks pity from this Court. He wants this Court to believe that if he had not been so lonely, perhaps his life would have turned out differently. Of course, that is not true. If BHASKAR had been in such mental and emotional turmoil by being in the United States, he could have simply returned home.

Based on a review of the PSR, there are no extraordinary characteristics of the defendant that warrant the minimum sentence imprisonment of 10 years. In most cases in which a defendant requests the minimum possible sentence, the court has before it some evidence that the particular defendant was involved in his community, had served his country in the military, or had lead an otherwise exemplary life. See United States v. Hanson, 561 F.Supp.2d 1004, 1007 (E.D.Wis. 2008) (defendant "held a funeral director's license and operated a funeral home for over twenty years, taking over the business from his father. He appeared to have been a successful and well-respected businessman."); United States v. Taylor, 2008 WL 2332314, *1-2 (S.D.N.Y. June 2, 2008) (the defendant had "excelled academically," graduated from the "prestigious Bronx High School of Science," served in the United States Navy for over four years, and received numerous commendation medals); and United States v. Grinbergs, 2008 WL 4191145, *9 (D. Neb. Sept. 8, 2008) (defendant had "served in the Army Reserve and was discharged honorably."). In the present case, there is

no evidence before this Court to suggest that the defendant lived as "honorable" of a life as the defendants from the above-cited cases.



BHASKAR discusses several cases from this district to support his claim that he should be sentenced to the minimum possible sentence allowed by law, 10 years imprisonment. However, none of the cases cited by BHASKAR involve a victim as young as Victim 1. Many of the cases cited by BHASKAR do not involve hands-on touching, and many only involve the exchange of sexual images. BHASKAR is a child predator who deserves little sympathy when considering the proper sentence to be imposed. He is a parent's worst nightmare and a danger to the community.

5

██████████████████████████████████████████████████

████████████████   ████████████████████████████████

████████████████████████████████   ████████████████

███   █████████████████████████████████████████████

████████████████   ████████████████████████████████

███████████████████████████████   █████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████


██████████████████████████████████████████████████

██████████   ██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████ █ ████████████████████████████████

████████████████████████████████   ██████████   ███

███


███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████  BHASKAR coerced an unsophisticated immature 11-year-old child to have sex with him.  It is the government's

7

position that although he may have appeared to be an upstanding citizen on the surface, underneath the false exterior was a dangerous criminal who preyed upon children to satisfy his sexual desires. The true picture of BHASKAR'S character can be found in the text messages exchanged with Victim 1, which he thought no one other than Victim 1 would ever see. The content of the text messages are discussed below.

### B. The Nature and Circumstances of the Offense Warrant a Sentence Within the Guideline Range

As set forth in the PSR, the offense of conviction involved a 22-year-old adult male enticing and coercing a child to have sex with him. BHASKAR exchanged text messages on August 11, 2018 with Victim 1, a person he met on a dating focused social meeting application. Victim 1 was an 11-year-old child at the time.

In his sentencing memorandum, BHASKAR goes to great lengths to argue that he was not aware of Victim 1's age. BHASKAR claims that he thought Victim 1 was a 15-year-old child, not an 11-year-old child. He claims that he did not know she was 11 years old when he first began to text her, when he was enticing and coercing her to have sex, when she sent him images of herself, when he met her in person or when he had sex with her. BHASKAR insists that "[i]t was not until after he was arrested in this case that Mr. Bhaskar learned the complainant was not 15 years-old, but in fact was 11 years-old." Dkt. 57 at 28.

Despite the numerous text messages BHASKAR received from Victim 1, evidencing a complete lack of maturity on the part of Victim 1, including an email where the 11-year-old child recognized that she was too young for the defendant, BHASKAR maintains that he

8

thought Victim 1 was older. It is clear that BHASKAR does not want this Court to appreciate the appalling fact that BHASKAR coerced an 11-year-old child to have sex with him. BHASKAR understands that his sentence will be substantially more severe, if this Court were to acknowledge that Victim 1 was an immature young child who was unable to protect herself from a dangerous child predator like him.

The text messages between the defendant and Victim 1 demonstrate that BHASKAR had to have been aware that Victim 1 was a very young child. For example, on August 11, 2018, BHASKAR expressed interest in going on a date with Victim 1. Victim 1 said, "I'm too young tho." Gov. Exh. 1 at 1. BHASKAR immediately responded "Nah u aren't." *Id*. And then fifteen seconds later, "How old r u?" *Id*. It is evident from BHASKAR'S quick replies that even before he asked Victim 1 how old she was, he first had to assure her that age was not an issue for him. In BHASKAR'S estimation, it did not matter how young Victim 1 was as he intended to coerce and entice her to have sex with him no matter her age.

Victim 1 continued to exchange texts with BHASKAR and went on to tell the defendant that she "like[d] to draw for fun." *Id.* This innocent thought clearly was written by a little girl. Anyone with a conscience would have recognized that they were having a conversation with a child, as very few teenagers or adults would ever offer such a simple and beautiful sentiment as an inducement to start a romantic relationship.

There is no doubt that during the conversation Victim 1 was being untruthful when she told BHASKAR that she was 15-years-old. However, it had to have been clear to

9

BHASKAR from the entirety of the conversation that Victim 1 was exaggerating her age and that BHASKAR actually was having a conversation with a very young child. Knowing just that, that he was conversing with a child, BHASKAR began to pressure Victim 1. BHASKAR pressured Victim 1 to meet with him as soon as possible. He asked, "Why not [meet for a date] today?" Gov. Exh. 1 at 2. BHASKAR insisted that he would meet her anywhere and in order to get her alone suggested that they watch a movie at his apartment. *Id. at* 3. Victim 1 responded to BHASKAR, "I'm not sure my mom will let me." Gov. Exh. 1 at 4. Again, this exchange is further evidence that BHASKAR had to have known he was dealing with a very young child. Showing his high moral character, BHASKER asked Victim 1, "Do u have to tell her?" *Id.* He then advised Victim 1 to lie to her mother, "Just tell her u r going out with a friend." *Id.* BHASKAR knew Victim 1 was a child and encouraged her to lie to her mother in order to avoid parental oversight. This encouragement to evade parental oversight is further evidence of the defendant's lack of moral character.

As the conversation continued, BHASKAR asked Victim 1, "Have you dated anyone before?" When it was clear that Victim 1 had not been on a date before and that Victim 1 must have been very young, BHASKAR'S questioning became personal and he would not stop probing and prodding. His tone changed and he became much more aggressive. He asked Victim 1, "Are u a virgin?" Gov. Exh. 1 at 6. And then, "Do u ever get horny and such? Do u masturbate?" Id. at 7. After it was agreed that Victim 1 would meet with BHASKAR, BHASKAR began asking a series of vulgar questions that became more and more crude: "Would you fuck me? Condom or no? … Loud or quiet" Id. at 10. Fast or slow? 69 or doggy style? Lights on or off? Rough or gentle? Cuddle or leave?

10

Committed or booty call? … So, you want to lose your virginity to me? … Have u ever felt orgasm or cummed or squirted? … Would u like it if I ate ur pussy tonight btw? Would you like to get ur pussy eaten? Please don't be scared. I know u must be nervous a bit but I'm really friendly. … Is there anything else u don't know about sex that I can teach u tonight? … [After discussing various sexual positions] Do you wanna do anything else sexually? Like getting fisted or oral sex? … And do u know what's fisting? Oh btw when we do the 4 positions do u wanna do anal sex too? … No fisting then. How about anal sex?" Id. Only a person lacking any moral character whatsoever would ask a child if she would like to be "fisted." BHASKAR thought no one would ever discover these offensive text messages, and as a result revealed his true character. Not only are all of these questions rude and crude, they also prove that BHASKAR had to have believed he was having a conversation with a young, immature child. A mature teenager or adult would have never tolerated such offensive questions. The conversation would have ended quickly.

In his sentencing memorandum, BHASKAR claimed that he thought Victim 1 was older than her actual age because (1) he was conversing with someone that he met on an adult website; (2) even Victim 1's mother thought Victim 1 looked older than her actual age; and (3) Victim 1 told him that she was 15 years old. However, these are all just excuses that show his unwillingness to take responsibility for his actions. Besides, it is also a lame attempt to "slut-shame" the victim. He blames an 11-year-old child for being on an adult dating website; for having conversations with other adult males; and for looking "older than her given age." Dkt. 57 at 27. BHASKAR should be ashamed for attempting to "blame" the victim for his actions. The evidence is clear that BHASKAR knew he was conversing with

11

a young child. It appears that BHASKAR now understands just how appalling his actions will appear to the Court, if the Court agrees with the government's assessment of the evidence.

The content of BHASKAR'S text messages are shameful. BHASKAR'S text messages are particularly disturbing when you again consider that, at the time, BHASKAR knew he was communicating with a child. He gained the child's trust, and then skillfully prodded and probed, until he felt comfortable enough to ask perverted, graphic and sexually explicit questions for his own self-gratification. *See* PSR ¶¶ 13-15. These explicit questions never would have been posed to an adult, because an adult would have immediately rejected the offensive overtures. But to an immature child, with limited life experiences, BHASKAR did not appear to be what he was, a sexual predator. Victim 1 was young and unsophisticated, and unable to identify the danger that BHASKAR posed to her. That is exactly why BHASKAR chose to engage Victim 1 in the first place.

To state it simply, BHASKAR was a 22-year-old man who enticed and then raped an 11-year-old child. To say that his conduct was offensive would be a complete understatement. His conduct shocks the conscience. The nature of the offense warrants a 30 year sentence of imprisonment.

### C. The Guidelines Calculations

According to the defendant, he "do[es] not object to the accuracy of the guideline calculations as set forth in the PSR." Dkt. 57 at 28. Instead, he requests that the Court consider the "duplicative nature of the underlying circumstances of some of the advisory Sentencing Guideline enhancements." *Id*.

BHASKAR complains about, but does not object to, the application of (1) the two-level enhancement under U.S.S.G. §2G1.3(b)(3)(A) for use of a computer; (2) the eight-level enhancement under U.S.S.G. §2G1.3(b)(4)(A) for the offense involving a minor who has not yet attained the age of 12 years; and (3) the five-level enhancement under U.S.S.G. §4B1.5(b)(1).  The complaints are unjustified and unsupported by any basis in law. BHASKAR may not like the way the law is written, or applied, but there exists no basis to support his contention that the Court should ignore the sentencing guideline enhancements that apply in this case.  Rather than object, because no basis for an objection exists, BHASKAR simply asks the Court to ignore the law.

### D.     The Seriousness of the Offense, the Need to Promote Respect for the Law, and to Provide Just Punishment All Warrant a Sentence within the Advisory Guideline Range

For the reasons cited above, the seriousness of the offense, the need to promote respect for the law and the need to impose just punishment all warrant a 30 year sentence of imprisonment.

There are few offenses that are as serious as this.  The defendant coerced and enticed an 11-year-old child to have sex with him.  Although BHASKAR did not force himself upon Victim 1, or give her drugs or alcohol to render her incapable of giving consent, he coerced, enticed and manipulated a vulnerable child who was too young to give consent.  BHASKAR is not a violent rapist who forces his victims to have sex with him.  He is, in many respects, even more dangerous.  He manipulates the weakest amongst us, young immature children, to have sex with him.  He is a child predator.  It is inconceivable that a smart college

graduate of Penn State University would not recognize that it was wrong to engage a child on the internet, entice this young girl and then have sexual intercourse with her.

Therefore, for the reasons cited above and under the principles of just punishment, a sentence of 30 years imprisonment is appropriate.   18 U.S.C. § 3553(a)(2)(A).

E. **The Need to Afford Adequate Deterrence to Criminal Conduct and the Need to Protect the Public Warrant a Sentence Within the Applicable Guidelines Range**

Child sexual abuse is one of the most insidious crimes in this country.   Both Congress and the United States Supreme Court have found that the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance because of the psychological and physical effects such abuse has on children and their families.

As justification for higher sentences in child abuse offenses, Congress stated:

> (2) The Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers.   "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance, New York v. Ferber 458 U.S. 747 (1982), and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain."   Osborne v. Ohio, 495 U.S. 103, 110 (1990).
>
> (3) The government thus has a compelling interest in ensuring that the criminal prohibitions against child pornography remain enforceable and effective. "The most expeditious if not the only practical method of law enforcement may be to dry up the

>market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." Citing Ferber, 458 U.S. at 760.

The Protect Act, Title V. - Obscenity and Pornography, Sec. 501. Findings.  As stated by Congress, the government has a compelling interest to protect children from sexual predators. Ferber, 458 U.S. at 757.  A solution in effectively combating the rising tide of the sexual exploitation of children is for legislatures to authorize penalties severe enough to sufficiently deter pornographers from ever beginning the practice of exploiting children for sexual purposes.  "If we are to achieve progress in attacking the growing problem of child pornography and its resulting harms, we must be prepared to adapt our responses to meet this very real threat in a world of 'virtual realities.'"  (Brief of Amicus Curiae on Behalf of the National Center for Missing & Exploited Children at 15, Ashcroft v. The Free Speech Coalition, 122 S. Ct. 1389 (2001) (No. 00-795)).

Deterring other individuals from the sexual exploitation of children and protecting the public are critical issues for this Court to consider.   Therefore, the government submits that a sentence of 30 years imprisonment would provide adequate deterrence to the defendant and others interested in engaging in similar conduct, and protect the public from further crimes of the defendant.   18 U.S.C. § 3553(a)(2)(B).

## **CONCLUSION**

For the foregoing reasons, the defendant should be sentenced to a 30 year term of imprisonment.

DATED: Buffalo, New York, September 21, 2020.

                                        JAMES P. KENNEDY, JR.
                                      United States Attorney

BY:   s/ RUSSELL T. IPPOLITO, JR.
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York   14202
        716-843-5843
        Russell.Ippolito@usdoj.gov