UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,   *        Docket No.
                            1:19-cr-00007-WMS-HKS-1
                            *
                            *        Buffalo, New York
           v.               *        October 7, 2020
                            *        11:08 a.m.
                            *
SACHIN AJI BHASKAR,         *        SENTENCING
                            *
         Defendant.         *
                            *
* * * * * * * * * * * * * * *


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIAM M. SKRETNY
UNITED STATES DISTRICT JUDGE


APPEARANCES BY ZOOM:

For the Government:          JAMES P. KENNEDY, JR.,
                             UNITED STATES ATTORNEY,
                             By RUSSELL T. IPPOLITO, JR. ESQ.,
                             Assistant United States Attorney,
                             Federal Centre,
                             138 Delaware Avenue,
                             Buffalo, New York  14202
                             Assistant United States Attorney
                             Appearing for the United States


For the Defendant:           MAHER & PITTELL, LLP,
                             By JEFFREY G. PITTELL, ESQ.,
                             4240 Bell Boulevard,
                             Suite 302,
                             Bayside, New York  11361.

                             LAW OFFICES OF JULIE RENDELMAN,
                             By JULIE RENDELMAN, ESQ.,
                             535 Fifth Avenue,
                             Suite 2525,
                             New York, New York  10017

The Courtroom Deputy:        GENEVIEVE S. RADOS

```
 1  Court Reporter:              BONNIE S. WEBER,
                                 Notary Public,
 2                               Robert H. Jackson Courthouse,
                                 2 Niagara Square,
 3                               Buffalo, New York  14202,
                                 Bonnie_Weber@nywd.uscourts.gov.
 4

 5          Proceedings recorded by mechanical stenography,
                 transcript produced by computer.
 6

 7              (Proceedings commenced at 11:08 a.m.)

 8

 9          THE CLERK:  All rise.

10          THE COURT:  Good morning, please unrise.

11          (Discussion off the record.)

12          THE CLERK:  The judge has come in.  I'm going to call

13  the case and then we can put you in a breakout room.

14          Criminal case 19-7, United States versus Sachin Aji

15  Bhaskar.

16          THE COURT:  Good morning, everybody.  We have a full

17  compliment on Zoom.  We will be using the Zoom platform for the

18  purposes of sentencing this morning.

19          Now, I think it was Mr. Pittell who indicated the

20  breakout session with Sachin Bhaskar -- Aji Bhaskar was not

21  complete, we will break off to that breakout session.

22          But before we do that, I just want to get everybody

23  identified on the record.  I need to make certain findings and I

24  want to be assured that everybody is ready to go forward this

25  morning.
```

1          I am ready, just so everybody knows.  And I believe we

2    have a very substantial compliment of individuals that are

3    participating in the Zoom conference, other than the attorneys

4    and Mr. Sachin Aji Bhaskar.

5          So with that, at least for the purposes of the opening

6    volley, if you will, I need to make sure that Mr. Bhaskar can

7    hear me.

8          Mr. Bhaskar, can you hear me okay where you are?  All

9    right.  He's on mute, I believe.

10         Can you hear me now?

11         **THE CLERK:**  The cellblock will need to unmute the

12   video equipment.

13         **THE COURT:**  All right.  Mr. Bhaskar, can you hear me?

14         **THE CLERK:**  Is there a marshal in the room with

15   Mr. Bhaskar?

16         **THE COURT:**  He can hear okay.

17         **THE CLERK:**  He can hear.

18         **THE COURT:**  We need to get him set up.  In the

19   meantime, we can work on that, as long as he hears me

20   preliminarily, I think we can go forward.

21         **THE DEFENDANT:**  Can you hear me?

22         **THE COURT:**  There we go.  All right.  Tell me what

23   your full name is, please, Mr. Bhaskar.

24         **THE DEFENDANT:**  Oh, me?

25         **THE COURT:**  Yes.

1            **THE DEFENDANT:**  Sachin Aji Bhaskar.

2            **THE COURT:**  Okay.  Mr. Bhaskar, thank you.  You are

3   represented, I believe, by two attorneys, Jeffrey Pittell and

4   Julie Rendelman, but for the record purposes, if you would

5   announce who you are, please, Mr. Pittell.

6            **MR. PITTELL:**  Good morning, I'm Jeffrey Pittell

7   appearing as counsel on behalf of Mr. Bhaskar.

8            **THE COURT:**  Are you ready for sentencing along with

9   Mr. Bhaskar?

10           **MR. PITTELL:**  Yes, I am.

11           **THE COURT:**  And I believe it's Julie Rendelman; is

12   that correct?

13           **MS. RENDELMAN:**  Yes, Judge.  Julie Rendelman as well

14   for Mr. Bhaskar and, yes.  I'm ready for sentencing.

15           **THE COURT:**  Okay.  Mr. Bhaskar, are you ready for

16   sentencing this morning?

17           **THE DEFENDANT:**  Yes.

18           **THE COURT:**  Okay.  I will allow the breakout session

19   in just short order, but I want to identify the prosecutor as

20   well, please, if you could tell us who you are.

21           **MR. IPPOLITO, JR.:**  Good morning, Your Honor.  Russell

22   Ippolito with the Government.

23           **THE COURT:**  Is the Government ready?

24           **MR. IPPOLITO, JR.:**  The Government is ready.

25           **THE COURT:**  And then we have the representative from

1    the probation office, Lisa Ferraro.  Who is all the author of

2    the presentence report in this case.

3           Ms. Ferraro identify yourself, please.

4           **MS. FERRARO:**  Lisa Ferraro, U.S. Probation.

5           **THE COURT:**  I have a revised report dated

6    September 21st of 2020.

7           Are there any updates to that report?

8           **MS. FERRARO:**  No, Your Honor.

9           **THE COURT:**  And Mr. Pittell and Ms. Rendelman, on

10   behalf of Mr. Bhaskar, have you received that report and

11   discussed and reviewed it with Mr. Bhaskar?

12          **MR. PITTELL:**  Yes.

13          **THE COURT:**  Okay.  Thank you.

14          Just a couple of more matters before we get back to

15   the breakout session, and when everybody is ready, I will be

16   ready to go forward with sentencing.

17          And the way that I do that is I have certain

18   statements to make in the first instance, as it relates to some

19   of the considerations for sentencing.

20          I will make the offer to hear from defense counsel, as

21   well as Mr. Bhaskar, as well as the prosecutor, before I get to

22   making a final decision on what a fair, just and reasonable

23   sentence should be.

24          One that, in this case, which is a serious case and a

25   serious matter, should be sufficient, but not greater than

1    necessary and that will be my ultimate objective.

2            We are proceeding by way of Government Zoom platform,

3    which means, bottom line, is we are proceeding remotely.  And in

4    my judgment that is probably the most efficient and effective

5    way to proceed today, with the understanding that if Mr. Bhaskar

6    required or demanded that he be brought into the courtroom

7    itself, arrangements can be made for that, but it would take a

8    little bit of scheduling time to accomplish that.

9            The consent must be a voluntary consent to proceeding

10   by way of this Zoom platform proceeding.  I think in some

11   respects it can be more effective and efficient, even than an

12   in-court proceeding.

13           I believe that the interests of justice will be well

14   served by this proceeding.  That it is in the public interest to

15   proceed in this fashion.  I find that there is really no

16   prejudice as long as everybody is on board to going forward in

17   this fashion.

18           I take it Mr. Pittell and Ms. Rendelman, do either of

19   you have a preference?  Do you want me to address you jointly

20   and then whomever wants to speak can speak, otherwise I'll

21   prioritize one or the other.  It gets a little confusing.

22           Ms. Rendelman, how do you want to proceed on this?

23           **MS. RENDELMAN:**  I'm glad you asked me first.  So I

24   think that Mr. Pittell is probably going to be dealing with the

25   initial questions and I will be dealing kind of secondarily.

1            So perhaps we start with Mr. Pittell and if it

2    changes, we will let you know, if that works.

3            THE COURT:  Sure.  Absolutely.  That works.

4            MR. PITTELL:  Judge, if I may, I think that we would

5    actually get to the sentencing proceeding, the first order of

6    business will be our objection to the PSR.

7            THE COURT:  Well, you are going to have to wait for me

8    until I get to that.  We're not there yet.

9            MR. PITTELL:  Okay.  Right.

10           THE COURT:  It takes a little time to work through

11   this, because as you know, Mr. Pittell -- and, Mr. Bhaskar, this

12   is all for your best interests.

13           The law requires that I do certain things, so that you

14   know what your rights are.  I need consent from you to go

15   forward first with this Zoom proceeding.

16           And I need to know that you're doing or agreeing

17   voluntarily, with no threats or no force to get you to consent.

18           Is that something that I can rely on?  Is that a fair

19   statement, that you are okay with going forward on Zoom and that

20   you are doing it voluntarily, Mr. Bhaskar?

21           THE DEFENDANT:  You are talking to me?  I couldn't

22   hear that.  Hello.

23           THE COURT:  Yes.  Yes.  Did you hear what I asked you?

24   Did you hear the question?

25           THE DEFENDANT:  Can you please repeat the question?

 1          **THE COURT:**  Sure.  The question is, are you

 2   voluntarily consenting to go forward with sentencing remotely

 3   using this Zoom platform?

 4          **THE DEFENDANT:**  Yes.

 5          **THE COURT:**  Okay.  Let me ask you this:  Along with

 6   that question, have you had any drugs, alcohol or medicine this

 7   morning that interferes in any way with your clear thinking in

 8   your opinion, as far as this sentencing is concerned?

 9          **THE DEFENDANT:**  No.

10          **THE COURT:**  Okay.  Mr. Pittell, are there any issues

11   that you see with respect to the competency of your client

12   today, in terms of his ability to communicate with you and

13   Ms. Rendelman, as far as what he needs to do in connection with

14   sentencing?

15          **MR. PITTELL:**  No.

16          **THE COURT:**  Okay.  With respect to proceeding by Zoom,

17   I do find that there is voluntariness here.  Counsel had

18   discussed this with Mr. Bhaskar.

19          If that's not accurate, let me know.  Mr. Pittell, has

20   that discussion taken place?

21          **MR. PITTELL:**  Yes.

22          **THE COURT:**  All right.  And we have a standing order

23   in this district, which is consistent with the concerns and the

24   directives of the Cares Act to make for effective and efficient

25   proceedings that replicate as closely as possible to actual

1    in-court proceedings on serious matters, critical stages such as

2    sentencing, so those findings are now a part of the record.

3              Just so you know, Mr. Bhaskar, this is for you.  You

4    have certain rights and then we're going to let you break off

5    and discuss matters with your lawyers until they are ready and

6    you are ready to go forward.

7              But you have the right to an attorney until your case

8    is complete in all respects and that includes any decision or

9    right that you want to exercise as far as any appeal is

10   concerned to another court.

11             Your attorneys can be hired.  In this case, you

12   retained Mr. Pittell and Ms. Rendelman.  If you did not have

13   sufficient funds to hire an attorney or attorneys, and you

14   qualified under Federal law, an attorney would be assigned to

15   represent you from the role of our certified lawyers and/or from

16   the Federal Public Defenders Office, depending on, kind of, the

17   manner in which the location is exercised in this district.

18             And you always retain the right to represent yourself.

19   That is an absolute right that you have, but keep in mind, one,

20   that you can only have one attorney at a time.

21             If you represent yourself, then you are, in fact, the

22   lawyer for yourself.  If you have other lawyers, they are the

23   lawyers.  They make the calls before me, rather than you,

24   because the lawyers have to speak for a defendant in a criminal

25   case.

1              I am accepting the fact that Mr. Pittell and

2    Ms. Rendelman are your lawyers and they can speak for you.  Now,

3    that's important in another respect, because if you are going to

4    take an appeal to another court, you or your lawyers need to

5    file a notice of appeal document within 14 days after I complete

6    your sentencing and that gives you eligibility.

7              If that is not done, you lose your right to take an

8    appeal.  Do you understand?

9              Mr. Bhaskar, do you understand?

10             **THE DEFENDANT:**  Yes.

11             **THE COURT:**  Okay.  Thank you.  All right.  With that,

12   I find that Mr. Bhaskar is understanding.  I'm aware of your

13   educational background.  I've gone through a lot of documents in

14   your case.  I've observed you.  I'm comfortable going forward.

15             If there is anything that impacts negatively on that,

16   that, Mr. Pittell, you have seen or, Ms. Rendelman, you have

17   seen so far, let me know.

18             I don't see that, so I'm comfortable going forward

19   from my observations.

20             Mr. Pittell, any difficulties that you see?

21             **MR. PITTELL:**  No, Your Honor.

22             **THE COURT:**  Ms. Rendelman?

23             **MS. RENDELMAN:**  No, Judge.

24             **THE COURT:**  Okay.  From the Government's standpoint,

25   Mr. Ippolito, the Government is on board?

1          **MR. IPPOLITO, JR.:**  For that and more, Judge.

2          **THE COURT:**  Okay.  All right.  Then with that before I

3    get into what I next have to do, because I have to make certain

4    findings based on my understanding of the contents of the

5    presentence report, I am going to seal the report after we're

6    done.

7          And that in my judgment best protects the privacy

8    interests of you, Mr. Bhaskar, but that enables that report to

9    be released upon application of my decision.

10          I am relying on specific parts of that report for my

11    findings of fact.  And that's basically from pages five through

12    ten of the report on -- and in paragraphs eight through 24,

13    which gives the explicit details that relate to the crime that

14    we're talking about, which is a one count indictment involving

15    sexual enticement of a minor, which is a Class A felony charge

16    in Federal law.

17          And that charge was the subject of the plea of guilty

18    that was entered on March 5 of this year.

19          So with that backdrop, and before I get to making the

20    findings, I'm going to let you break into the breakout room and

21    then I'll explain to you what other documents I will consider in

22    readying for sentencing in this case.

23          So when you are ready, my law clerk, Ms. Rados, will

24    put you, Mr. Pittell, and Ms. Rendelman, into a breakout session

25    with Mr. Bhaskar and then you notify us when you're ready and we

1  will resume.

2          Thank you.

3          **MR. PITTELL:**  Thank you.

4          **THE COURT:**  Ms. Rados, give it a try.

5          **THE CLERK:**  All right.

6          **THE COURT:**  This is a confidential session.

7          **MR. PITTELL:**  I think Ms. Rados needs to resend.

8          **THE COURT:**  She's working on it right now.

9          **MR. PITTELL:**  Thank you.

10         (Discussion off the record.)

11         **THE CLERK:**  All rise.

12         **THE COURT:**  Okay.  Please unrise.

13         Okay.  Good morning, again.  I'm looking at the

14  Government Zoom platform monitor and it appears that all of the

15  attorneys, those that -- members of the public that wish to

16  participate are all present and, of course, Sachin Aji Bhaskar

17  is present.

18         This is a public proceeding, obviously.  We did put

19  notice on for anybody that wanted to participate and our court

20  reporter is in the process of transcribing, so we should be

21  ready to go.

22         Ms. Rendelman, since you switched locations on my

23  screen with Mr. Pittell, is the defense ready?

24         **MS. RENDELMAN:**  Yes.

25         **MR. PITTELL:**  Yes.

1          **THE COURT:**  All right.  And, Mr. Pittell, you are

2    ready?

3          **MR. PITTELL:**  Yes.

4          **THE COURT:**  And, Mr. Sachin Aji Bhaskar, you are ready

5    as well?

6          **THE DEFENDANT:**  Yes.

7          **THE COURT:**  Okay.  If you need to stop for any reason,

8    just let me know.  Raise your hand or interrupt whatever is

9    going on, so that we can make certain that everything according

10   for what's best for you takes place.

11         And, likewise, for the attorneys on both sides, if you

12   need to interrupt for any reason, just let me know and we will

13   work everything out clarification-wise and try to get whatever

14   the issues are resolved.

15         I'd referenced in the preliminary remarks, at least

16   the first bout with those, what this case is about, primarily

17   sentencing on the one count indictment charge with a Class A

18   felony, which is the sexual enticement of a minor charge.

19         There are no objections to the factual statements

20   contained in paragraphs 8 through 24 and pages five through ten

21   of the revised presentence report, which was last revised

22   September 21st of 2020.

23         And, Ms. Ferraro, that are no additions to that, I

24   take it, right?

25         **MS. FERRARO:**  That's correct, Your Honor.

1            **THE COURT:**  Okay.  And I will be adopting the

2    statements that are contained in there as my findings of fact

3    and I incorporate those into the record.

4            That will be supplemented as findings with the

5    information that's provided to me in this proceeding as we go

6    forward.

7            Just so everybody knows, I am in receipt of

8    approximately 15 character reference letters and I read each one

9    of those carefully.

10           And they are from, among others, the parents of

11   Mr. Bhaskar, and they reference certainly positive and

12   mitigating things with respect to Mr. Bhaskar.

13           I mean, his father pointed out that he has good

14   leadership qualities, among other things.  His father being an

15   ex banker and I think currently he's an entrepreneur.

16           I looked at his brother's letter, who also worked at

17   Calspan and who pointed out that his brother is certainly a

18   morally upright person.

19           His sister-in-law talks about the fact that he,

20   meaning the defendant, is a hardworking individual.  His uncles

21   stress that he is kind and that he is a good soul.

22           His friends, among those from Canada, find him to be

23   considerate and bright.  There are a lot of references to the

24   Toastmaster Club from acquaintances and friends and the bottom

25   line on all of those comments is what a great communicator

1    Mr. Bhaskar is.

2          So I'm going to give all of that -- and plus all the

3    other details from other individuals due consideration.  I've

4    also considered the psychological evaluations by Dr. Richard

5    Krueger from August of 2020 and from Dr. Michael Rutter, from

6    December of 2018.

7          And I've also considered really a plethora of

8    submissions, including Mr. Bhaskar's college materials,

9    writings, books he has read both in and out of his

10   incarceration.  They are all in the record at Docket Number 64.

11         I've sent spent a great deal of time reviewing the

12   very well presented and written sentencing memorandum from

13   defense counsel.  I mean, I think it numbers 44 pages and it was

14   substantive and it was thorough.

15         There was a 15 page Government response to that with

16   the transcript of conversation with the victim in this

17   particular case.  And I also looked at the response for the

18   sentencing memorandum that was part of the record as well.

19         The Government is moving for the application of an

20   additional one level departure for acceptance of responsibility.

21   I know this is all detailed, but it is necessary to make sure

22   that the record is clear and I'm going to grant that request.

23         That works for Mr. Bhaskar's best interest or

24   advantage in that it then results in an additional level of

25   credit.  That's been incorporated into the revised presentence

 1    report at paragraph 40.

 2          Now what is objected to is paragraph 49 of the revised

 3    presentence report, wherein the probation officer sets forth the

 4    underlying facts of the charges pending against Mr. Bhaskar.

 5          In Pennsylvania, those charges relate to allegations

 6    that Mr. Bhaskar sexually assaulted a 15-year-old girl in April

 7    of 2018.

 8          And the defendant has been charged with rape by

 9    forceable compulsion, a felony.  Involuntarily deviant sexual

10    intercourse with a person less than 16 years of age, a felony.

11    Statutory sexual assault four to eight years older, a felony.

12    And indecent assault of a person less than 16 years old, a

13    misdemeanor.

14          The revised presentence report in this case details

15    the facts set out in the Pennsylvania State Police report.  That

16    recitation includes that the allegations asserted against

17    Mr. Bhaskar by the victim were contradictory.

18          Nonetheless, the facts, as relayed, are accurately

19    included in the report.  Those facts involve conflicting details

20    concerning the circumstances of the sexual encounter, but there

21    appears to be little dispute that a sexual encounter occurred

22    between the defendant, Mr. Bhaskar, who was 21 years old at the

23    time and the 15-year-old victim, who due to her age, could not

24    legally consent.

25          Defendant requests that the contradictory statements

1    set forth in the presentence report as drawn from the police

2    report be stricken.

3           I find no cause to do so.  These facts are accurately

4    drawn from the police report and serve as speculation for the

5    charges listed in paragraph 49.

6           I understand that the charges are pending at this time

7    and that Mr. Bhaskar is entitled to a presumption of innocence.

8    That goes without saying.

9           Defendant's denial of certain portions in this

10   recitation are noted.  And I will consider his position, as I

11   contemplate an appropriate sentence in this case.

12          So defendant requests that were made through his

13   attorneys to strike portions of paragraph 49, however, are

14   denied.

15          That leaves us with a properly calculated sentencing

16   number or as we some times more technically refer to it as a

17   total offense level of 43, with a criminal history of one, which

18   is the lowest of six numbers.  And usually that's mitigating as

19   far as the outcome of sentencing is concerned.

20          The advisory range for this offense by way of custody

21   is life.  The advisory range for supervised release is five

22   years to life.

23          And there is no eligibility for probation and the fine

24   range is $50,000 to $250,000.  Now, that's a very severe penalty

25   exposure.

1          As I just indicated the advisory range, under the

2    guideline, is life imprisonment.  Under the statute Mr. Bhaskar

3    faces a minimum sentence of ten years up to a maximum of life.

4          The Government requests that I impose a sentence of

5    30 years.  You, Mr. Bhaskar, requested a nonguideline sentence

6    of ten years, the statutory minimum.

7          Either way that you look at the requests, those

8    requests for time are severe.  But the offense conduct here is

9    deeply disturbing.

10         You, Mr. Bhaskar, a 22-year-old man at the time met a

11   girl on a dating site called badoo.  In August of 2018, this

12   girl told you that she was only 15.

13         Nonetheless, you engaged in multiple sexually explicit

14   and extremely vulgar conversations with her, offered to teach

15   her sexual techniques and encouraged her to lie to her mother

16   and meet you for the purposes of engaging in sexual activity and

17   unfortunately she did.

18         Now, I know this is graphic and I know it's hard for

19   some to hear, but that being the case, these are the facts.

20         Later in August of 2018, you picked up the minor

21   victim and took her to your brother's apartment, where you had

22   unprotected sex with her.

23         Thereafter, you continued to contact the victim for

24   sex weeks later and you did all of this supposedly believing

25   that the minor victim was 15 years old.  In fact, she was just

1    an 11-year-old child.

2          And as I discussed earlier, this was not the first

3    time you allegedly had sex with an underaged girl.  While I

4    understand that the circumstances are disputed, you have been

5    charged with engaging in similar conduct just four months prior,

6    in April of 2018.

7          You are charged with having sex in Pennsylvania with a

8    15-year-old girl, after arranging to meet her for sex using an

9    online dating site.

10          Now, against this full backdrop, I have read and

11   considered your sentencing submission, which is voluminous.

12          I am and have become aware of the fact that you enjoy

13   considerable family and community support and that you are

14   regarded as an accomplished, bright young man, who enjoys

15   reading, writing and participating in Toastmasters Club, that

16   academic club that is emphasized in a lot of the letters, both

17   in high school and college.

18          And that you hold an engineering degree from Penn

19   State and were employed in your field of expertise.

20          I am aware, Mr. Bhaskar, that you claim to have been

21   sexually abused by an older man in the community, when you were

22   12 years old.  And that you claim to have experienced some

23   culture shock when you came to the United States from Oman.

24          Finally, I have reviewed the assessments completed by

25   Dr. Krueger and Dr. Rutter.  They conclude that you suffer from

1  depression, but that you are not a danger to the community and

2  that you have a low risk of recidivism.

3           But I'm also aware of the Government's view, which is

4  that you, Mr. Bhaskar, are a child predator, who prays on young,

5  vulnerable girls to exploit.

6           It characterizes you, that is the Government -- as I

7  quote:  "A parent's worst nightmare".  And as a danger to the

8  community.

9           It views you as a wolf in sheep's clothing,

10 so-to-speak.  Given your outward appearance as an upstanding

11 citizen, with a solid education and a good job, as an engineer.

12          And the Government rightfully highlights the

13 appalling -- the appalling fact that you enticed an 11-year-old

14 child to have sex with you.

15          One who told you that, quote:  "She liked to draw".

16 Which most certainly should have caused you to realize that you

17 were communicating with a young, immature child.

18          The Government notes that when the victim referenced

19 her mother not approving of a meeting, that you told her to lie

20 and say she was just meeting a friend.

21          In the Government's view, you conduct shocks -- your

22 conduct shocks the conscience, as you enticed and then raped an

23 11-year-old impressionable child.

24          I'm not going to impose sentence until I hear from the

25 lawyers and you, Mr. Bhaskar, but as you can probably tell, I do

1    view your conduct to be incredibly troubling and incredibly

2    serious.

3           I will factor in everything that I now hear before

4    making a final judgment.  And I can assure you that the sentence

5    that I will impose will be a fair sentence, to the best of my

6    ability.

7           It will be sufficient, but not greater than necessary.

8    It will hold you accountable.  It will seek to deter and it will

9    be in the public interest and respectful of the victim and

10   future considerations.

11          So with that, I guess, I start with Mr. Pittell or --

12          **MR. PITTELL:**  Yes, Judge.  I would like to address one

13   aspect of our objection to paragraph 49 of the PSR.

14          I acknowledge that you reviewed our response, the

15   Government's response, the probation department's response and

16   you made your ruling.

17          However, there is one aspect to probation's response

18   which is a revised PSR on page 24 that I would ask that you give

19   consideration to ordering being removed.

20          I'm actually referring to -- it is the -- it's in at

21   least on the page that I have, the third full paragraph of page

22   24, where the probation department writes:  It appears the fact

23   that the minor victim may have suffered from mental health

24   issues has been noted by the defendant to disparage the victim.

25          Even though they are referencing the defendant,

1    obviously, the objection was written by counsel.

2           First of all, we did not reference her mental health

3    issues with the intent to disparage the victim.  Also, her

4    having mental health issues was brought up by the probation

5    department.

6           It's mentioned in paragraph 49.  Our reference to it

7    is in response to what they wrote in paragraph 49.  And all that

8    we did was we actually identified the mental health issue, which

9    was reality disorganization disorder, which explained why she

10   gave conflicting reasons.

11          So I think it's unfair to the defense for a opinion

12   comment to be included in the PSR, which, from our perspective,

13   is not accurate, and we would request that that be stricken from

14   the PSR.

15          **THE COURT:**  Okay.  Mr. Pittell, my ruling will be the

16   same.  I -- I don't believe that there is a sufficient basis to

17   strike it.

18          I will view it only, however, with the caveat that you

19   pointed out to me, which bottom line does not resolve the

20   statement issues that you referred to.

21          So on that basis, it will remain, but I will view it

22   differently than if it were an established fact.

23          **MR. PITTELL:**  Okay.  The -- since we're talking about

24   the PSR and the guidelines, I just want to make some comments

25   about the guidelines.

1           And then regarding the other comments regarding

2    sentencing that Ms. Rendelman will make, I trust, as Your Honor

3    has seen from our submission, that we do not object to the

4    calculation of the sentencing guidelines.

5           We have reviewed the PSR carefully.  We reviewed the

6    guidelines and we agree that the calculation is correct.

7           However, in our sentencing submission, we just wanted

8    to point out that the sentencing guidelines are not perfect.  I

9    mean, the Supreme Court has said that in Booker and Fanfan

10   cases, which criminal practitioners don't even need to cite.  We

11   all know what they stand for.

12          And that is why we referenced the two level

13   enhancement under Section 2G1.3(b)(3)(A) as being duplicative

14   for use of a computer it's why we referenced 2G1.3(b)(4)(A) for

15   an offense involving a minor between the age of 12.  And it's

16   why we had referenced the repeat offender enhancement under

17   Section 4B1.5(b)(1).

18          Again, we're not objecting to the application of these

19   guidelines.  The facts warrant application.  However, we just

20   urge you that when you consider how these -- the life guideline

21   was reached, that to some extent the guidelines can cause or

22   these enhancements can cause an overstatement of the guideline

23   range.

24          The use of the computer, we urge the Court to consider

25   that in this day and age, that enhancement is -- is somewhat

1   duplicative because offenses such as this one can only be done

2   electronically.  Even though it's called use of a computer,

3   using any electronic device suffices.

4        Realistically, this offense is not done on paper

5   anymore.  It's not done through the U.S. mail anymore.  In

6   today's modern day and age, it's going to be done with a

7   computer.  Again, I ask you to take that into consideration.

8        Regarding the other two enhancements, the repeat

9   offender enhancement, the attachment involving a person under

10  the age of 12, the way they are written, they broadly apply, but

11  we tried to point out is that in this instance, when Mr. Bhaskar

12  had sex with the victim, he did not know that she was under the

13  age of 12.

14       He was not a predator seeking children under the age

15  of 12.  The fact that she turned out to be 12 causes the

16  application of the guideline.

17       But I just urge you to at least give consideration

18  that this guideline applies even to someone who is not

19  intentionally seeking out someone who was under 12 years old, as

20  well as someone who is seeking out children that are under

21  12 years old.

22       The same thing with repeat offender.  In that

23  instance, as we've indicated in our submissions, in the

24  Pennsylvania case, Mr. Bhaskar, when he met her, he met her on

25  an adult website.

1          He thought he was meeting someone over 16.  The fact

2     that she is under 16 subjects him to criminal liability.  But at

3     the same time, there is a difference between people that

4     intentionally seek out minor children and people that do not

5     intentionally seek them out, but nonetheless are subject to

6     criminal liability because statutorily the person is under the

7     age.

8          So, again, I'm not objecting.  I'm just asking that

9     when you consider all of 3553A factors, including the

10    consideration of the sentencing guidelines, that you at least

11    take these comments into consideration.

12         **THE COURT:**  Okay.  Mr. Pittell, I will assure you that

13    I will do that.

14         As we all know, the sentencing guidelines are just

15    that.  They are a guide and I am required to consider their

16    guidance, if you will.

17         And I can and will consider the nuances and the

18    variation that might arguably be applicable.  I am certainly

19    well aware of the fact, as you point out, that we are in an

20    electronic age and that communications essentially are

21    electronic.

22         And I know you don't dispute that the victim in this

23    case was less than 12 years old.  She was 11.  And all of that

24    information and the distinctions and the variables, I will take

25    into account in assessing the impact of the mitigating

 1  circumstances, as well as the aggravating circumstances in this

 2  case, so I give you my assurance that I will do that.

 3          Ms. Rendelman, are you now going to say something or

 4  do I --

 5          **MS. RENDELMAN:**  Yes, Judge.

 6          **THE COURT:**  Okay.

 7          **MS. RENDELMAN:**  Yes.  Thank you, Judge.  And bear with

 8  me, sometimes there is some noise outside, I think they are

 9  pounding on the outside of the door doing some kind of

10  construction, so I apologize.

11          You know, Judge, I'm not going to spend a lot of time

12  going over our sentencing letter.  I think, obviously, the Court

13  acknowledged we wrote a 44 page memo.

14          It included Mr. Bhaskar's school records, medical

15  records, forensic reports, letters of achievement awards,

16  letters of support from both family and friends.

17          I think the Court recognizes that myself, along with

18  Ms. Sepafinin (phonetic), who worked with us as well, who is my

19  associate, we spent a great deal of time just so you understand,

20  not just writing a memo, but discussing what should be included,

21  how it should be included, what we believed was potential

22  litigation.

23          And I think on of the things that I am most proud of

24  is we presented the facts as honestly as we could.  We stuck to

25  the facts.

1          I know from my experience as both a prosecutor and a

2     defense attorney now, who have handled sex crimes on both sides,

3     I think we really were cautious when writing this memo and

4     cognizant of any sensitivities that exist in writing a memo

5     where a child is involved in sexual abuse.

6          And I think the Court has already recognized some of

7     the mitigation that we spoke about, which is taking

8     responsibilities early in the process and admitting his guilt.

9          No prior convictions.  He has a criminal history of

10    one.  He's been a model inmate and has used his time positively,

11    instead of causing any more trouble than has already happened.

12         He has suffered sexual abuse, parental abuse.

13    Excelled in school, even while suffering a substantiating

14    depression both before and during the time the crimes were

15    committed.

16         And I think from Dr. Krueger, we have that this is an

17    individual with a low risk of offending -- reoffending, I

18    apologize.

19         We believe this is, obviously, are the factors that we

20    asked the Court to consider.  And while my comments about our

21    report are brief, even though the Government wrote a much

22    shorter sentencing memo and, in fact, the majority of it

23    involved actually a recitation of the text messages between the

24    victim and my client, I think that I would be remiss if I did

25    not respond to the comments made by the Government in their

1    submissions.

2           And I admit, Judge, and -- you know, look, everyone

3    has been doing this a long time.  I've had my own experiences,

4    positive and negatively with the Government at different times.

5           And one of the things I admit was when I read the

6    memo, I was a bit taken back -- taken aback, and my colleagues

7    were as well, about some of the misleading statements by the

8    Government in their memo to the Court.

9           I want to start with something that I think is kind of

10   subtle, but kind of defines for me and Mr. Pittell the setting

11   of how the report was written.

12          Now, obviously, there is facts in there that are

13   undisputed.  There is text messages between the two that none of

14   us can question.  No one sitting here, as the Court

15   acknowledges, in any way states that my client did not have sex

16   with an 11-year-old child and the important nature of that.

17          But I want to start with something so subtle and that

18   is -- and maybe it's a stylistic approach.  Maybe all of the

19   Government's responses are written this way.

20          Although, I have read a bunch from Buffalo and haven't

21   seen this before, but it seems that the government wanted to

22   intimate that Sachin Bhaskar is the writer of our memo.

23          And therefore --

24          **THE COURT:**  I'm sorry.  Repeat that.

25          **MS. RENDELMAN:**  That Sachin Bhaskar is the writer of

1    our memo.  And therefore kind of takes liberty to bash

2    Mr. Bhaskar on the way he wrote the memo.

3           Even though he full well knows -- the Government

4    obviously knows that it was the attorneys that wrote that memo.

5    A memo that was written quite fairly to advocate for our client,

6    which is what our job is.

7           And although it's a subtle thing, it kind of rang for

8    us throughout, and that's why I go back to what Mr. Pittell

9    described about, where the Government writing that we wrote to

10   just -- we wrote about the Pennsylvania girl's young woman to

11   mental health to disparage her, knowing full well it was already

12   in the probation report, which is misleading to the Court, which

13   makes it unfair to us and our client.

14          And so I give you that as the backdrop, because when

15   you turn to page three, the prosecution writes as follows:  It

16   is difficult to determine how much of his -- being Sachin

17   Bhaskar's -- background actually is true, as little of it is

18   corroborated or refuted.

19          First, Judge, almost every single word in the memo has

20   been corroborated by other exhibits provided not just to the

21   Court, but to Mr. Ippolito.

22          When we spoke of his schooling, we provided the school

23   and the Government with transcripts.  When we spoke of his

24   successes and his accolades in school, we provided

25   documentation, plus letters from those who knew him.

1        We spoke of his depression.  We provided evidence of

2    medical records from before the incident -- both incidents in

3    New York and Pennsylvania, from doctors in India.

4        We discussed his sexual abuse as a child.  And we then

5    provided medical records from 2016, two year before these

6    incidents happened.

7        He is described by a doctor in India:  Sachin has

8    constant episodes from his childhood incident affecting

9    day-to-day activities.  Symptoms of mental trauma, depression

10   that have persisted for several years.

11       He -- he revealed being the victim of brutal sexual

12   abuse during his seventh and eighth grades.  Constant

13   flashbacks, fear of disclosing for fear of judgment and

14   embarrassment.  His depression deteriorated over the session.

15       And then, when he returns to India, January of 2018

16   and September of 2018, this is the very time that the incidents

17   occur, he meets with another doctor.

18       And that second doctor describes him as manic.

19   Believed he should be in a mental health center.  Weeping

20   spells, anger inactivity, depression, fatigue, lack of

21   interaction, all around the time of the incidents, which is

22   April and August of 2018.

23       We have corroboration from Sachin's older brother,

24   from forensic reports about the incident.  Mr. Bhaskar was also

25   completely cooperative with probation.  He willingly spoke to

1   them.

2           The Government has had ample time to investigate any

3   aspects of his background that they questioned.  And it's

4   disingenuous for the Government to sit idle, do no work, and

5   then say little is corroborated.

6           I move on to page four, where it says:  He now --

7   being my client -- seeks pity from this court.  He wants this

8   court to believe, that if he had not been so lonely, perhaps his

9   life would have turned out differently.

10          Again, where does my client ever ask for pity from

11  this court?  Sachin Bhaskar pled guilty and acknowledged his

12  guilt.

13          He didn't ask for pity.  He is asking, as we are, for

14  a fair and just sentence, as every other defendant, whether a

15  United States citizen or not, who comes before this district and

16  for a sentence that is fair and just.

17          He's not asking this court to believe that he

18  committed this crime, because he was lonely.  There was

19  absolutely nothing in our report that suggests such a view.  And

20  the Government is well aware of that, unless the Government did

21  not take the time to read our memo.

22          The submission gives this court what the submission is

23  supposed to give this court, the background of the individual

24  before them, his potential state of mind, both during and after

25  the incidents.  His mental health during and after.  His

 1   achievements.  His failures.  We gave you everything.

 2          Then on page four, he goes on to state:  -- the

 3   Government:  If Bhaskar had been in such mental and emotional

 4   turmoil by being in the U.S., he could have returned home.

 5          I have to be honestly, Judge.  I read that 30 time --

 6   I read our argument 30 times.  30 times, if not more.  And when

 7   I read that, I had such a sick feeling in my stomach -- and

 8   maybe I'm interpreting it wrong, but Mr. Pittell and

 9   Ms. Sepafinin felt the exact same way I did.

10          First of all, that's not what our memo ever said.  Not

11   once did we indicate that his mental and emotional turmoil, was

12   based on him being in the United States.  That is a false and

13   misleading statement.

14          We raised that fact that there are culture differences

15   in the United States from where he grew up.  Those are facts.

16          We raised the fact that coupled with his cultural

17   differences, Mr. Bhaskar was clearly suffering mental health

18   issues as described by his doctors, both prior to the crimes and

19   around the time.

20          The Court has a right to consider that in determining

21   if any aspect of those cultural differences, along with his

22   corroborated mental health played a role in why he is before

23   Your Honor today or not.

24          Not let me be clear that he entered this country

25   legally.  He went to school in the United States, that he was

1   legally permitted to go to.

2          Yet the Government seems to suggest that those were

3   not U.S. citizens.  Coupled with those who have mental health

4   issues have no place in U.S. society.  Send them back from where

5   they came from.

6          Completely dismissive of mental health issues that

7   seem to stem partly from his own sexual abuse in India, as

8   though somehow Sachin should be punished more for not going

9   home.  Punished more because Bhaskar is from a different

10  culture.

11         Then on page four in yet another transparently

12  misleading statement to this court:  In most cases -- and the

13  word is most cases, in which the defendant requests the minimal

14  possible sentence, the Court has some evidence that the

15  particular defendant was involved in the community, served his

16  country, or lead an exemplary life.

17         He goes on to name three cases from 2008.  Those are

18  the only cases he could come up with.  And not a single one from

19  this jurisdictions.  Not one from this jurisdiction.

20         One defendant is a funeral director, who went -- one

21  who went to a good high school and had accommodation from the

22  Navy, one who had been in the Army reserve.

23         And we know that they are exist in your jurisdiction,

24  because we gave you only a small handful of tons of them in

25  which the result occurred.

1          Intimating that you have to be a either funeral

2    director or a member of the Army reserve in order to get a

3    mandatory minimum in this district.

4          The defense begs to differ.  The case law begs to

5    differ.  The Government goes on to state that there is no

6    evidence before this court to suggest the defendant lived as

7    honorable a life as the defendants from the above cited cases.

8          And the reason he says this is because the

9    Pennsylvania case is just four months before this incident.

10   Well, Hanson one of the cases he refers to, was a 49 year old

11   funeral director, who had been drinking himself into a stupor

12   for four years before he finally got caught with child

13   pornography.

14         And the Government says that person is much more

15   honorable than my client.  Sachin Bhaskar excelled academically

16   in his college.  Excelled in sports.

17         While others were out partying, he worked with those

18   students to help him with his career.  Educated the community.

19   Sachin sanctioned for biggest philanthropic event at Penn State.

20   I went there.  I know.

21         Visited nursing homes as part of the community

22   service.  Continued to go.  Developed fellowships with the

23   elderly.  Sat for hours with them.

24         Described by friends fortunate.  As one of the

25   people -- as someone who expressed gratitude for the opportunity

 1    to receive a higher education, and that the crime was not in his

 2    character.

 3           Jenny Hahn, who said he has helped members with their

 4    Penn State club, who had English as their second language.

 5    Patty Thor describing him riding seven miles in the rain to

 6    attend an event because he did not want to burden anyone.

 7           Is he less honorable than the three he described?

 8    Then the Government goes on:  Bhaskar discusses cases from

 9    districts to support his claim that he should be sentenced to

10    the minimum.

11           None -- this is what the Government says:  None

12    involving the victim as young as the victim in this case.  Many

13    don't involve hands-on touching.  Many only involve exchange of

14    sexual images.

15           The Government's description of these cases, we

16    provided, is so incredibly grossly misleading.

17           Of the seven cases we provided from this district, it

18    was the sentence was at or below ten years.  Five of the seven

19    involved sexual abuse hands-on touching of the minors.

20           Those same five cases didn't just involve sexual

21    abuses.  They also possession of child pornography as well,

22    which does not exist here.

23           The only two case where there was not hands-on

24    touching, were, one, the Court sentenced the defendant to five

25    years, but both involved meeting with minors, who ended up being

 1   undercovers.

 2           In addition, in one of those where the court gave the

 3   mandatory minimum, the guy had child pornography on his computer

 4   after his arrest and lied at his trial regarding his criminal

 5   actions.

 6           Further, while the Government claims none of cases

 7   where a defendant received a ten years sentence had a victim

 8   under the age of 11.

 9           Perhaps the Government missed Clores Torres

10   (phonetic), where the defendant was 25.  He had oral sex with a

11   14 year old, plied with marijuana and alcohol and then created

12   images of him placing a four year old child's hand on his penis

13   and masturbating.

14           The same defendant was the hit of an online chat room

15   that treated porn -- child porn, including images of minors less

16   than 12 years of age, depicting violence and masochism.  He got

17   a ten year minimum in this jurisdiction.

18           While not referencing in this memo, Judge, I also

19   refer to United States V Krepp, 2018.  It was a case before

20   Judge Siragusa.

21           The defendant was a registered sex offender, prior to

22   this offense.  He repeatedly raped a ten year old who he had

23   lived with.

24           He continued for four -- I'm sorry, for five to six

25   years.  In fact, the Government in this jurisdiction submitted

1    an affidavit from the child describing the crime of Mr. Krepp

2    coming into her room every night.

3           They described him as a relentless serial pedophile

4    and rapist.  Yet when they were asked for the amount of time,

5    they asked for 168 months.  Half.  Half of what they are asking

6    here today.

7           Is Mr. Krepp somehow more honorable than my client?

8    Is the Government suggesting that the sex abuser who owned a

9    bouncy house to lure children, but received the minimum lived a

10   more honorable life than my client?

11          On page five, Bhaskar, he says -- which is the

12   Government says:  Failed to address the allegations of similar

13   sex abuse by the victim from the State of Pennsylvania.

14          It is a blatant dishonest comment.  We address it not

15   only in our objections in the presentence report, our,

16   sentencing memos spoke about it.

17          The only thing we that objected to was the probation

18   recitation of the facts.  Page five:  He chooses his victims who

19   may have had a difficult childhood in order to be sure he could

20   later change their credibility if they were ever caught.

21          Where is the evidence of that in way, shape or form?

22   There was no evidence presented that the victims had a difficult

23   childhood, let alone that the defendant knew of a difficult

24   childhood.

25          He met the victim and the victim in the other case on

1   an adult website.  He was interested in them when he believed

2   their age to be adult females above the age of consent.

3           There is no evidence that his crimes were thought out,

4   planned, premeditated, that he sought out individuals who could

5   later change the credibility.  In fact, he admitted immediately,

6   after speaking with the agents, that he had sex with the Buffalo

7   victim.

8           Page six:  Bhaskar argues he was the victim of sexual

9   abuse as a child and claims to have suffered deep depression at

10  different times.

11          Of note in the reports provided bu Dr. Krueger and

12  Rutter, neither gave any serious consideration to the

13  allegations of the victim of Pennsylvania.  Completely untrue.

14          And first of all, Bhaskar was not arrested for the

15  initial crime at the time that the initial doctor did the

16  evaluation.

17          Krueger speaks about the Pennsylvania case in his

18  assessment.  It's named and it is talked about in the

19  assessment.

20          Second Rutter's evaluation was before the Pennsylvania

21  case came to light.  And there is no evidence he knew she was

22  less than 16 years of age of consent at the time that he had sex

23  with this girl.

24          Page seven:  Never mentioned the father's abuse to

25  Krueger or to the doctors in India.  And he describes the father

1   as friendly and loving.

2        The Government says:  No mention of this abuse.  Then

3   in the next sentence, within their -- their memo, they write:

4   Neither doctor ruled out malingering, which is the intentional

5   production of exaggeration of physical, psychological symptoms.

6        If anything, Judge, just so we're clear, Bhaskar

7   minimizes his depression when speaks to friends.  Minimizing the

8   depression is the exact opposite of what of malingering.

9        How many victims of domestic abuse have also referred

10  to abusers as friendly and loving.  It is disingenuous to any

11  spouse to say differently.

12       In fact, the DSM-V of which the Government refers to,

13  is full of references to victims are viewing tormenters as

14  positive role models.

15       Because in many ways Mr. Bhaskar didn't and doesn't

16  view the physical abuse at the hands of his father as abuse.  As

17  his brother spoke about, the family viewed such behavior as a

18  culture norm at the time.

19       To be honest, Mr. Bhaskar didn't even want to talk to

20  us about what happened with his father.  He felt and still feels

21  it is disrespectful and dishonorable to admit to such family

22  secrets.

23       But to question it happening and then for the

24  Government to raise issues about why Dr. Krueger and Rutter

25  didn't rule out malingering?

1            Mr. Ippolito refers to three cases in 2008.  All, I

2      believe, had psych reports.  None, I believe, used the

3      phraseology that the doctor ruled out malingering.

4            Why?  Because if the doctor thought malingering

5      existed, that would have been part of the report.

6            Further, Krueger uses other evidence, including

7      interviews with his brother, medical records from before the

8      crimes to ensure his truthfulness.

9            In addition, there is a Hare Psychopathy test, which

10     is administered.  And it has items in it that talk about

11     malingering.

12            Malingering is defined as an intentional production of

13     false or grossly exaggerated physical or psychology symptoms

14     motivated by external incentive.

15            Bhaskar scored incredibly low in that area.  Bhaskar

16     didn't even tell that his father abused him.  He indicated he's

17     not as depressed as he was before.

18            He's doing the absolutely opposite of malingering.  If

19     he wanted to overdue it, he would have had a whole lot more of

20     mental issues -- mental problems to the mix.

21            Page 11:  He blames an 11-year-old child for being on

22     an adult dating website, for having conversations with other

23     adult males.  Bhaskar should be ashamed of himself for

24     attempting to blame the victim for his actions.  Lame attempt to

25     slut shame the victim.

 1          Mr. Pittell, Ms. Sepafinin and myself spent hours

 2   discussing this case, Your Honor.  We spent hours deciding what

 3   would be included in this memo, balancing how to discuss this

 4   sensitive issue.

 5          I was a prosecutor half my career.  The Government is

 6   well aware there is a difference between an individual who

 7   stalks an elementary school looking for children or goes to a

 8   non-adult website, hoping to meet underage girls, verus an

 9   individual who meets someone on an adult website, reaches out to

10   them believing they are an adult.

11          Even probation's report acknowledges that that's true.

12   This is simply what unfortunately I hate thinking goes on in a

13   Federal courthouse, what we refer to -- at least in New York

14   City, as a cheap shot.

15          Government argues he had to have known she was 11, not

16   15, but 11.  He had to of.  But we're not supposed to respond

17   and give background to the Court?

18          The Court, Your Honor is supposed to be provided with

19   the facts that surround the case.  That evidence includes the

20   good, the bad, and the ugly.

21          The fact that she was on an adult site, just as

22   probation talks about.  That she was having conversations with

23   adult males and appeared older than her given age, is not to

24   give an excuse to the defendant's actions, but to give the Court

25   facts in terms of the context of how this unfolds to decide the

 1    appropriate sentence.

 2         The crime that Sachin Bhaskar admitted was

 3    inexcusable.  But the complete lack of objectivity on the part

 4    of the Government, they seek out one sentence, that the Court

 5    referred to, that she likes to draw is the defining moment that

 6    she is 11.  She says many other things, Your Honor, in the texts

 7    that one would never assume that she so young.

 8         We submit a sentence of ten years adequately takes all

 9    the factors into consideration.  Is a sufficient, but not

10    greater than necessary sentence in this case, based on all the

11    information that we have provided in our sentencing memo and our

12    comments here today.  Such a sentence takes the personal

13    history, characteristics of Mr. Bhaskar into consideration.

14         In terms of avoiding an unwarranted disparity, we have

15    referenced seven cases within the district, where a defendant,

16    like Mr. Bhaskar, had no prior criminal history, engaged in

17    similar or more egregious conduct and were sentenced to ten

18    years or less.

19         Similarly, a sentence consistent with what was imposed

20    upon those defendants provides sufficient deterrence.

21         Finally we submit that in light of the fact that

22    Mr. Bhaskar will, in fact, be deported after his sentence, a ten

23    year sentence does not further impose a further danger to the

24    community.

25         Thank you.

1          **THE COURT:**  Okay.  Ms. Rendelman, certainly the record

2    will reflect your argument and what you brought to my attention.

3          I mean, it's a little bit difficult and I think to

4    some extent unnecessary to go through a point-by-point rebuttal

5    of each point that you raised because they fall within

6    everything that has to be considered here.

7          You referenced a lot of things and I acknowledge that

8    there are distinctions that are not without distinction in terms

9    of what the Government presented and argued in your view on your

10   interpretation of what the Government has put forth for my

11   consideration.

12         I know you have been with the prosecutor's office, by

13   your admission, for a long time before embarking on defense

14   work.

15         And I think you and I both know that the Government is

16   accused time and again of sitting idle and taking liberties that

17   perhaps we can term specious under the facts and circumstances

18   of a particular case.

19         And that certain conduct that the Government perhaps

20   should have engaged in, but did not can result in the sick

21   feeling that you referenced, as far as employing arguments from

22   facts that lend themselves to that kind of argument, such as the

23   impact of cultural differences in this particular case.

24         I don't find any malfeasance by the Government in this

25   case.  I think the arguments that I viewed lend themselves to

1    fair inferences.  But when you talk about fair inferences, you

2    can spin that two ways.

3            And you know, as well as I know, that there are clear

4    distinctions between making an argument from facts that result

5    in absolute certainty and arguments from facts that can be

6    termed reasonable certainty.

7            So I have to look at it in a broad and open minded

8    fashion, in a way that's fair to the defendant in this case.

9            And what I do know is that what is before me is this

10   case, not argument.  Not innuendo.  And I know the difference

11   between for consideration purposes alleged predatory conduct and

12   admitting predatory conduct of a 11-year-old, whether on an

13   adult website or not and that's the way that I will be focused

14   in this case.

15           The sentence will be fair.  It will be just.  It will

16   be reasonable.  And we'll get there and I need to hear now from

17   Mr. Sachin Aji Bhaskar, because he's been listening to this case

18   and he's been listening to your argument.

19           And, Mr. Bhaskar, if there is anything that you want

20   to say, I will more than be happy to listen to that.  I think

21   it's important and maybe you think your attorneys have said

22   everything you want to say.  I don't know.

23           I do know you are a very bright guy.  I do know that

24   you are an established orator, of sorts.  I do know that you

25   have an accomplishment trail to be proud of, but I also know

1   that you admitted to a very serious crime here and that has to

2   be reckoned with.

3         There has to be accountability.  There has to be

4   fairness.  There has to be punishment.  There has to be

5   deterrence.

6         These are all as Ms. Rendelman will concede and I

7   know, those are buzz words, but they have a very -- and

8   Mr. Pittell, when he talks about the guidelines, they fashion

9   themselves in a way that puts real meaning to those buzz word

10  terms, when it comes to protecting our society, especially our

11  most vulnerable, when you're talking about -- about -- well, in

12  Government terms:  In conduct such as this is a parent's worst

13  nightmare.

14        Well, I suppose there is an argument to be made that

15  maybe there is something worse than that, but the fact of the

16  matter is, responsibly, one can argue that this is a parent's

17  worst nightmare.

18        When you have an 11-year-old girl that is taken

19  advantage of and prayed upon such as in this case, society can't

20  have that happen.  You know that.  There is no doubt in my mind

21  that you know that.

22        Yes.  There are a number of factors that have been

23  argued and highlighted in the materials submitted to me that

24  have to be considered, whether it's a diagnosis of depression or

25  whether it's the incidents of sexual abuse that perhaps you

1  experienced, all of those things factor into ultimate conduct.

2       I'm trying to put that together as best I can.  In

3  order to complete my consideration, I want to hear from you and

4  as well from the Government.

5       So if you think it's important to say something that

6  you think I should consider, I'd like to hear you now.

7       **THE DEFENDANT:**  Can you hear me?

8       **THE COURT:**  Yes.  I can hear you.

9       **THE DEFENDANT:**  Okay.  Firstly, and most importantly,

10  I would like to apologize to the victims of this case and their

11  families.

12       I -- let's just have one moment of silence.  Just one

13  moment of silence for the families that have suffered just

14  because of the actions that I have taken, so that I can find my

15  voice to speak.

16       Okay.  I'm back.  As I said, I'm really at a loss

17  for -- to the families that were inflicted by my action,

18  including -- no, not -- including the victims and my whole

19  family, who has suffered a lot as well.

20       And the suffering who have not -- I'm not for who to

21  suffer -- I have not done anything, because they are so far away

22  from me that -- and I feel like I am on a different planet

23  because --

24       **THE COURT:**  Hold on, hold on.  No, no.  Wait, wait.

25  Take your time, because I have to know what you're saying and

1    the court reporter has to be able to take down.  I know it's

2    emotional.  Just take your time.

3            **THE DEFENDANT:**  Okay.  If you do not understand what I

4    say, just ask me to repeat it and I will repeat it you, okay?

5            You got that?

6            **THE COURT:**  Well, that's what I'm doing, so thank you.

7            **THE DEFENDANT:**  What I'm saying is I'm really sorry to

8    everybody, the victims, my family, my friends who I have lost,

9    my families' friends, who they have lost, who I don't even know

10   what they are going through because half of the things I'm not

11   able to read.

12           It's not for them to be able to share it with me.

13   It's not possible, including the victims and their families.  I

14   really wish that I could get letters from them to see what their

15   suffering is, so that I could share my remorse with them, but

16   that's not something that I cannot see.

17           And I feel like if I was able -- if I was able to get

18   those kinds of voices from the victims and their families, I

19   would feel a little bit more happy, because I would be able to

20   share my voice with them and tell them how sorry I am.

21           Because this feels like I'm apologize to no one,

22   because the victims are not in front of me, the families are not

23   in front of me, and I cannot share my love.

24           If I had a chance, I would do anything and anything to

25   apologize to them.  And the way that I would accomplish that,

 1   which no other criminal can, is by acting with remorse, which I

 2   have already started in my mind.

 3        Because let's think about this in one way, how can a

 4   criminal apologize to a victim?

 5        **THE COURT:**  Slow down, slow down.

 6        **THE DEFENDANT:**  What?

 7        **THE COURT:**  If you would slow down, please, it would

 8   make it easier for us to understand.

 9        **THE DEFENDANT:**  Okay, okay.  Sorry.  I would say how

10   can an alleged criminal apologize to a victim and their family,

11   when they cannot see them?

12        I am going to accomplish that in one way or the other,

13   when I can mental up and show the family how I have suffered.

14        It is extremely hard for me to express my emotion, my

15   thoughts, the struggles that me and my family are going through

16   with immigration, the distancing and the -- the entire

17   conference of emotion.

18        The -- the purity of human emotion cannot be expressed

19   in just few words or -- (indistinguishable).

20        I would have to say that I will write a book, which I

21   have been doing a lot, which is ideal.  But before I get into

22   that, I would just like to explain my remorse to these families

23   and how I am not able to express them.

24        Imagine me behind this cell here.  How can I express

25   my emotions to people who I cannot see or to people who I don't

1    hear their own voices?

2           I really wish I had a chance to express my emotions,

3    that I have accomplished through my emotions.

4           Secondly, I would like to thank my family and my

5    lawyers and the friends who have come on the call, who have

6    supported me through this dark time.

7           Julie, I know of, have spent a lot of time on my case

8    and I would like to thank her a lot for helping me throughout

9    the case and to bring about a resolve to this case.

10          And I would also like to thank the four people of the

11   my family, my brother, my dad, my mom and sister-in-law, but I

12   will not call her sister-in-law because she is more than a

13   sister to me.  I never had a sister and she's maybe the sister I

14   always wanted.

15          And I would like to my Federal department and the

16   Court and the prosecutor and the cops who caught me and put me

17   in this situation, because throughout my life, from my childhood

18   all the way to the U.S., even after I got educated and a job, I

19   have still been depressed.

20          I have been looking for, hey, what is it that I want

21   to do with my life?  Because I am -- feel so insignificant.  I

22   can say even, though, I attended a highly acclaimed college and

23   even though I have a God-given right with dreams, I have never

24   felt accomplished.

25          I have never felt happiness in its truest sense.  I

1    have never felt like I'm going to be somebody.  I am going to

2    now.  I have been put in this situation.

3         Actually, I feel I have been crushed down in -- in the

4    chains of this underworld, if you say.  Because through this

5    underworld, I have found awarenesses (sic) of what I exactly

6    want to do with my life and that is to write.

7         I want to become a writer.  I want to become an

8    activist.  I want to become a journalist.

9         I want to go back to India and become the true Indian

10   that I am, because I have a spirit that you can't see.

11        Can you feel how it feels like to be an alien?  I'm an

12   alien because I have never been in my own country.  I have not

13   spent enough time in my own country.

14        I have spent two months every year.  I have spent only

15   two months in my own country since my work happens.

16        **THE COURT:**  Wait, wait. Slow down.  Pause.  Compose

17   yourself, please.

18        **THE DEFENDANT:**  Yes.

19        **MS. RENDELMAN:**  Your Honor --

20        **THE COURT:**  Compose yourself.  Take your time.

21        **MS. RENDELMAN:**  Your Honor --

22        **THE COURT:**  Yes, Ms. Rendelman.

23        **THE DEFENDANT:**  I have not -- I have not -- I -- many

24   people -- excuse me for --

25        **THE COURT:**  Wait, wait.

1          **THE DEFENDANT:**  That is my emotion.  That's the way

2    humans are and I apologize.  I apologize for getting too

3    emotional.  I apologize for that.  I --

4          **MS. RENDELMAN:**  Mr. Bhaskar --

5          **THE COURT:**  Okay.  Stop, stop for a moment.  Stop for

6    a minute.

7          Ms. Rendelman --

8          **MS. RENDELMAN:**  Your Honor, I would like, if we can

9    have just a minute to speak to him.

10         Is that something we can do?  Normally, obviously, we

11   would be right next to him.  It's difficult to do that.

12         **THE COURT:**  Sure, sure.

13         **THE DEFENDANT:**  We can -- we can end it.  Everybody

14   just end it.  Just end it.

15         I would like to just thank everyone for everything,

16   because I know the objection is just going to be for me to stop

17   talking, so I will.

18         **THE COURT:**  Okay.  I think, Ms. Rendelman, we will go

19   forward based on what your client just said.

20         Okay.  Mr. Bhaskar, thank you.

21         Okay.  Just take a deep breath.  Relax.  I know it's

22   emotional, but I think you should know, it's helpful if I

23   understand everything that you are saying.

24         And you know what it means to speak well, so make the

25   effort.  Divorce out the emotion.  If you get emotional, just

1    take some time out.  I'll hear you out, but go ahead.  Continue

2    now.

3            **THE DEFENDANT:**  No.  I'm done speaking because that is

4    too much going to show that I would just like to end it with

5    apologizing again.

6            And just thanking everybody to changing my -- to who I

7    am now, which is a very strong person and I have gained a lot of

8    happiness from my family and love, which I have never felt

9    before.

10           And I'm just happy for that, for where I have become,

11   how I have changed into an extremely strong personality and I am

12   hoping to go even further.

13           Wherever I'm going to be sent, I'm going to grow even

14   more strong.  That's in my notes.  I'm -- (Indistinguishable) --

15   just thankful for society and I will share my love for humanity

16   within the coming years.

17           And it will be seen and I will share it with everybody

18   on the street to live.  And perhaps there is -- that's the

19   reason of that.  That's all.

20           **THE COURT:**  Okay.

21           **THE DEFENDANT:**  That's all I have to say.

22           **THE COURT:**  Okay.  Thank you.  Thank you.  Okay.

23           Mr. Ippolito, is there anything that you would like to

24   say?

25           **MR. IPPOLITO, JR.:**  Yes, Your Honor.  Your Honor, this

 1   is a case about how the defendant was able to coerce an

 2   unsophisticated, unsure 11-year-old child to have sex with him.

 3        Although the defendant may appear to be a successful

 4   upstanding person on the surface, we know underneath that false

 5   veneer was a dangerous criminal who preyed on children to

 6   satisfy his perverted sexual desires.

 7        Plain and simple, what the defendant offers at

 8   sentencing are a bunch of excuses for his conduct.  The first

 9   excuse, the defendant maintains that the Court doesn't

10   understand who he is.  It's understandable.

11        He claims that he lived a tortured life in the United

12   States and blames the loneliness that resulted from a cultural

13   isolation for his actions.  Hogwash.

14        If he lived such a desperate life, such a miserable

15   life that he would stoop to getting children to have sex with

16   him -- I mean, he could have simply returned home.

17        Next, he says -- his next excuse is, I was victimized

18   as a child.  To support this claim, he submits barebones reports

19   from two doctors.

20        One report was prepared solely to get the defendant

21   released on bail, but what stands out from the reports are a

22   couple of things.

23        First, the doctors gave little to no consideration, if

24   any, to the allegation that the defendant committed similar

25   activity with another girl in Pennsylvania.

1        And in that case, just like here, the defendant

2   befriended a child.  The defendant coerced the child to have sex

3   with him and then the defendant did have sex with her.

4        Mr. Pittell raises the issue right at the beginning of

5   these proceedings today.  He says, wait a minute.  Wait a

6   minute.  I had an objection to this.  And by the way, I'm

7   objecting to certain inconsistencies.  And by the way, the

8   victim had mental problems.  Did I mention that the victim had

9   mental problems?  I mean, I want to make sure that we all know

10  the victim had mental problems.

11       We get it.  We also know that the defendant had sex

12  with a 15-year-old and we know that because of DNA evidence.

13       The second thing that stands out is neither of the

14  doctors talk about malingering.  They were hired solely for this

15  case.  You think that they would have said, we considered that.

16  We considered malingering and we found that there was no sexual

17  malingering here, in this case.  None of that.  None of that at

18  all.

19       The next excuse that the defendant comes up with, he

20  was physically abused as a child by his father.  He blames his

21  father.

22       Reports from Dr. Krueger indicated that the defendant

23  said that he had a friendly and loving relationship with his

24  father.

25       Why on earth would the defendant tell his doctor that

1    he had a loving relationship with his father, but tell this

2    court that he was physically abused?

3            There is only one reason, because he's lying.  He is

4    lying in a feeble attempt for getting sympathy points from the

5    Court.  He's lying to the Court to get just what he wants.  Just

6    like he lied to the victims in this case, because he wanted to

7    get -- he wanted to fill his sexual desires.  Hardly an

8    upstanding citizen.

9            Next, he blames the victim.  Well, he says she

10   shouldn't have been on an adult dating site.  He says, I didn't

11   know she was 11.  She told me she was 15.  He says, she looked

12   older than her age.

13           He then offers even the victim mother thought she

14   looked over.  First of all, how is it even a defense that the

15   defendant thought he was having sex with the victim who was 15.

16   His conduct would have been offensive either way.

17           He says, I never gave her drugs or alcohol.  No force

18   was involved.  It was consensual.  She was 11.  He coerced an

19   unsophisticated, immature 11-year-old to have sex with him.

20           He manipulated the weakest amongst us in order to

21   satisfy his perverted sexual desires.  This guy is a sexual

22   predator, with no morals whatsoever.

23           And now he comes to court today and he blames someone

24   else.  He blames me.  It's my fault he's in this situation.

25           Defense counsel's self-righteous indignation rings

1   hollow and nothing more than an attempt to change the

2   conversation.

3            Did you notice, she never talked about the case?  She

4   never talked about the text messages?  Why do you think that

5   was?

6            That the defendant thought his text messages would

7   never see the light of day.  We got a real picture of the

8   defendant through those text messages.

9            He claims he didn't know she was 11.  One of her very

10  first texts was, I love to draw.  Come on.  Does anyone believe

11  that he didn't know right then and there that he was dealing

12  with a child?

13           The victim talks about her mother would not approve of

14  her going on a date with him.  And to show what he what a classy

15  guy he is, the defendant says, do you have to tell her?

16           We know the defendant knew he was dealing with a child

17  and realizing -- and once the defendant realized he was dealing

18  with a young child, he became aggressive with his questions.

19           Are you a virgin?  Do you ever get horny and such?  Do

20  you masturbate?  These are not questions you would ask an adult.

21  These are not questions that you would ask of a teenager.

22           What happens?  He gets even more vulgar.  I'm not

23  going to belabor the point.  I listed the conversation for the

24  Court and I know the Court has reviewed them.

25           That you have -- Judge, you have the texts.  His texts

Proceedings - 10/7/20                                57

1    only become more and more graphic, more and more vulgar, and

2    more and more violent.

3           We know who this guy is, because he showed us who he

4    is.  He's true personality came out in text messages.  We saw

5    who he truly is and that's a monster.  He's a sexual predator,

6    who prays on young children.

7           He gained this child's trust and then skillfully

8    prodded and probed until he felt comfortable enough to ask

9    perverted, graphic and sexually explicit questions for his own

10   self gratification.

11          And if that were not bad enough, he convinced this

12   unsophisticated, immature child to have sex with him.

13          This defendant was a 22-year-old man, who enticed,

14   coerced and then raped an 11-year-old child.  To say that his

15   conduct was offensive would be an understatement.  And as I said

16   in my memo, his conduct shocks the conscience.

17          Now, you saw him here today.  You saw him get

18   emotional, but I wonder is he getting emotional or -- I guess,

19   is his emotional response from more a genuine expression of

20   remorse or is it just an expression of regret that he got caught

21   and now he is facing a lengthy prison sentence.

22          For all these reasons, Judge, the Government would

23   request a sentence of 30 years in prison, because such a

24   sentence is fair, just and reasonable.

25          **THE COURT:**  Okay.  Mr. Ippolito, thank you.

1          I mean, obviously, the attorneys for both sides

2   presented -- at least from my standpoint, the best arguments

3   that they could present for mitigation and for aggravation of

4   sentencing in this particular case.

5          You present a difficult individual, Mr. Bhaskar, for

6   sentencing purposes and, you know, I listened carefully to what

7   you had to say.

8          And it's disturbing to me in a certain respect,

9   because you have obviously a family that is very supportive and

10  very accomplished and they feed into you and you feed into them,

11  but on final analysis, at least in my view, you let them down.

12         And you let them down severely and you should be

13  ashamed of yourself as a person, as a man and as someone who has

14  received the benefits that hardworking individuals can make

15  available to you.

16         You have ability.  You have talent.  You have

17  intelligence.  And you misapplied all of those talents.  And

18  they are responsible -- or at least your actions are responsible

19  for getting you here, where you are today.

20         I listened carefully to your request with respect to

21  remorse and your inability to express that remorse to the victim

22  and her family.

23         I have to make a determination on remorse and the

24  genuineness of that remorse.  I guess in summary you can say

25  that you were given a full opportunity to express that remorse

1   here and you did it in an emotional way.

2          But I suggest to you, with due respect, that you

3   haven't suffered from not being able to meet with the family,

4   personally, because I think the chances are the family would not

5   have been receptive of your expressions of what you say is

6   remorse for the conduct that you were involved in.  And I think

7   that's very understandable in the context of your family and the

8   victim's family and families in general.

9          What you committed was a reprehensible crime.  And

10  beyond that, the expressions of remorse that you did intermix

11  with your comments, I was clearly focused on that.

12         And I don't hesitate to say that in my observations of

13  you and what you said, my view is that your remorse is not

14  genuine.

15         That it is replete with excuses.  And that in point of

16  fact, what truly you are is a child sexual predator and a danger

17  to the community.  I choose those words carefully, because they

18  are extraordinarily impactfull.

19         I am hopeful and I think that there are indicators

20  that you, as an individual, are not at this point beyond

21  rehabilitation, but you have a long way to go.

22         And it's going to take time and I personally don't

23  want to see you wind up losing everything that -- to some

24  extent, in your very youthful life, you have worked hard for and

25  benefited from your family, but it's going to take a lot to make

1  you a productive member of society once you are released from

2  prison in this case.

3        You've got to come to the realization, in my view,

4  that the predator that you have described as being is in point

5  of fact, you.

6        And if you don't accept that description, you're not

7  going to be able to turn your life around, where you can be

8  productive and where you can feel good about yourself.

9        Everybody did the best job that they could on your

10  behalf.  You let everybody down.  And the thought of what you

11  did to that 11-year-old girl is a nightmare.

12        You will have to pay the price for that and that's why

13  the sentencing laws are as harsh and severe as they are, because

14  that -- otherwise, what we would have is a society that would

15  open itself up to conduct like this.

16        It's bad enough as it is, right now, that it will

17  become more the norm than not.  Given all of that -- and, again,

18  as I have tried to indicate, you are not beyond redemption, but

19  you are going to need your family's support.

20        You are going to have to change your mindset.  You are

21  going to have to use the years that you are going to be confined

22  to the maximum benefit that you can derive.

23        And you have the ability to do that, but you and only

24  you can accomplish that.

25        So your sentence, Mr. Bhaskar, will be as follows --

1    and as I pointed out, the sentence should be sufficient, but not

2    greater than necessary and that's a tall order in this case,

3    when the guidelines call for life.

4            In my view, a fair and just sentence under the

5    circumstances is 20 years in jail.  That gives you the

6    opportunity for a life and it doesn't diminish the severity of

7    the crime that took place in this case.

8            There will be a number of conditions and they are very

9    important.  There will be a period of supervised release that

10   will be imposed, as well.

11           I will reserve that until I can complete the

12   imposition of the conditions of the sentence.  And you must obey

13   all of the standard conditions that are associated with

14   sentencing and they will be explained to you by your attorneys

15   and by the probation office, upon completion of sentence in this

16   case.

17           You cannot commit any other crimes, Federal, State or

18   Local.  You will be required to cooperate with the collection of

19   a DNA sample as required by at Justice For All Act of 2004,

20   because this offense occurred after September 13, 1994, and it

21   is not related to a illegal substance.

22           Since you do not have a history of substance abuse

23   problems and you likely will be deported from the United States,

24   the mandatory requirement for drug testing is waived.

25           But you shall not use or possess any computer data

1    storage device or any Internet capable device, unless you

2    participate in a computer and Internet monitoring program or

3    unless authorized by the Court or the U.S. Probation Office.

4            You must provide the probation office advanced

5    notification of any computers, automated services or connected

6    devices that will be used during the term of supervision.

7            The probation office is authorized to install any

8    application, as necessary, to surveil all activity on computers

9    or connected devices owned or operated by you.

10           You will be required to pay the cost of monitoring

11   services.  The probation office shall be notified via electronic

12   transmission of impermissible suspicious activity or

13   communications occurring on such computer or connected device

14   consistent with a computer monitoring program and policy in

15   effect by the probation office.

16           As triggered by impermissible suspicious activity, you

17   shall consent to cooperate with unannounced examinations of any

18   computer equipment owned or used by you.

19           This examination shallow include, but not limited to

20   retrieval and copying of all data from the computers, connected

21   devices, storage medium and any internal or external peripherals

22   and may involve removal of such equipment for the purpose of

23   conducting a more thorough inspection.

24           Any such monitoring or examinations shall be designed

25   to avoid as much as possible reading any privileged information

1    or any private material that is not illegal or reasonably likely

2    to lead to illegal material reference related to illegal

3    activity.

4            You must participate in sex offender specific

5    treatment program and follow the rules and regulations of that

6    program.

7            Your probation officer will supervise the details of

8    your participation in the program, including the selection of a

9    provider and schedule.

10           You are not to leave treatment until complete or as

11   ordered by the Court.  You are required to contribute to the

12   cost of services rendered.

13           You shall not have deliberate contact with any child

14   under 18 years of age, excluding any biological or adopted

15   children, unless approved by the probation office or by the

16   Court.

17           You shall not loiter within a hundred feet of

18   schoolyards, playgrounds, arcades or other places primarily used

19   by children under the age of 18.

20           Your probation officer has the discretion to authorize

21   you to pick up children at their school or other functions.

22   However, authorization must be obtained in advance from the

23   probation office or alternatively from the Court.

24           You shall register with the State sex offender

25   registration agency in any state where you reside, are employed

1    or carry on a vocation or are a student.  And you shall provide

2    proof of registration to the probation officer.

3              The probation office is authorized to release your

4    presentence report to the New York State Board of Examiners or

5    sex offenders.

6              Further disclosure to the county court, to the parties

7    involved, in the determination of your final classification

8    level is also authorized.

9              You shall submit to a search of your person, property,

10   premises vehicle or residence or any other property under your

11   control, based upon reasonable suspicion and permit confiscation

12   of any evidence or contraband discovered.

13             You shall submit to polygraph, computerized voice

14   stress analysis for such testing, not to exceed twice in a

15   calendar year.  And an additional two retest per year, as

16   needed.

17             That testing may include examinations, using a

18   polygraph, computerized voice stress analyzer or other similar

19   devices to obtain information necessary for supervision and case

20   monitoring and treatment.

21             You shall answer the questions posed during the

22   examination, subject to your right to challenge in a court of

23   law, the use of such statements as violation of your 5th

24   Amendment rights.

25             In this regard, you shall be deemed not to have waived

1   your 5th Amendment rights by making any such statements.

2          The results of any polygraph pretest or polygraph

3   examination may be disclosed to the U.S. Probation office and

4   the Court, but shall not be further disclosed without a court

5   order.

6          You are required to contribute to the cost of services

7   rendered.  I find that you do not have the ability at this point

8   to pay a fine orders and I order the fine waived.

9          I do find, though, that you are not indigent and can

10  afford to pay the mandatory $5,000 Justice For Victims of

11  Trafficking Act of 2015 assessment.

12         You shall pay a special assessment of $100, due

13  immediately.  If incarcerated and you don't have the money

14  readily available, you shall begin payment under the Bureau of

15  Prisons inmate financial responsibility program.

16         You shall be prohibited from possessing a firearm,

17  ammunition or other dangerous device.  And you shall not possess

18  a controlled substance and shall comply with the standard

19  conditions that have been adopted by the Court and you shall

20  comply with the conditions that I have just articulated.

21         I mentioned that I would impose a period of supervised

22  release.  I believe under the circumstances, a ten year period

23  of supervised release is reasonable and should be applicable.

24  If you are deported, it becomes unsupervised.

25         That will be your sentence.

1              Counsel, do you understand the sentence?

2   Ms. Rendelman?

3          **MS. RENDELMAN:**  Yes, Judge.

4          **THE COURT:**  Mr. Pittell?

5          **MR. PITTELL:**  Yes.

6          **THE COURT:**  Okay.

7          And, Mr. Bhaskar, do you understand the sentence?

8          **THE DEFENDANT:**  Yes.

9          **THE COURT:**  Okay.  Ms. Ferraro, is there anything that

10   I missed in imposing sentence?

11          **MS. FERRARO:**  No, Your Honor.

12          **THE COURT:**  All right.  I do -- Mr. Ippolito, is there

13   anything to dismiss?

14          **MR. IPPOLITO, JR.:**  No, Your Honor.

15          **THE COURT:**  All right.  Then I find the sentence to be

16   fair, just and reasonable, sufficient, but not greater than

17   necessary.

18          And having fully considered the 3553(a) factors

19   relating to both mitigation and aggravation, I find the sentence

20   to be absolutely appropriate.

21          That brings this case to a close.

22          **MR. IPPOLITO, JR.:**  Thank you, Judge.

23          **THE COURT:**  You're welcome.

24

25              (Proceedings concluded at 1:24 p.m.)

1

2      "I certify that the foregoing is a correct transcript, to the

3         best of my ability, from the record of proceedings in the

4                        above-entitled matter."

5

6

7     _s/ Bonnie S. Weber_              __March 6, 2020___
          Signature                          Date

8

9     BONNIE S. WEBER

10    Official Court Reporter
      United States District Court
11    Western District of New York

12

13

14

15

16

17

18

19

20

21

22

23

24

25