UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

**DECISION AND ORDER**
24-CV-39S
19-CR-7S

SACHIN AJI BHASKAR,

          Defendant.

## I. INTRODUCTION

Presently before this Court is petitioner Sachin Aji Bhaskar's counseled motion to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255. (Docket No. 104.[1]) For the reasons discussed below, Bhaskar's motion is denied.

## II. BACKGROUND

On January 8, 2019, a federal grand jury returned a single-count indictment against Bhaskar charging him with sexual enticement of a minor, in violation of 18 U.S.C. § 2422 (b). (Docket No. 12.) The indictment charged as follows:

> On or about August 11, 2018, in the Western District of New York, the defendant, SACHIN AJI BHASKAR, using facilities and means of interstate and foreign commerce, that is, a cellular telephone and the internet, did knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years, that is Victim 1, a person known to the Grand Jury, to engage in sexual activity for which any person can be charged with a criminal offense.

(Docket No. 12 (caps in original).)

---

[1] All docket citations are to the criminal case: 19-CR-7S.

Just over one year later, on March 5, 2020, Bhaskar pleaded guilty to this charge without the benefit of a plea agreement.  (Docket Nos. 46, 83.)  In short, Bhaskar admitted that he coerced an 11-year-old girl into having sex with him.   This Court scheduled sentencing for June 17, 2020.  (Docket No. 46.)

The COVID-19 pandemic impacted Bhaskar's sentencing proceedings.   On May 13, 2020, and again on June 30, 2020, defense counsel moved with the government's consent to adjourn Bhaskar's sentencing for two reasons: (1) it was unsafe for counsel to travel from the New York City area to Buffalo to meet with Bhaskar and appear for sentencing in person; and (2) more time was needed to prepare sentencing submissions. (Docket Nos. 48, 52.)

This Court granted each motion and ultimately rescheduled sentencing for September 9, 2020.   (Docket Nos. 49, 53.)   In its Text Order granting the second adjournment, this Court indicated that it was the final adjournment and that "[c]ounsel must make whatever arrangements necessary to confer with his client and prepare and file timely sentencing submissions."  (Docket No. 53.)

Notwithstanding the finality of the second adjournment, defense counsel moved for a short 10-day adjournment on August 21, 2020.  (Docket No. 54.)  In support of the motion, defense counsel explained that although the sentencing submissions were complete, Bhaskar had not yet reviewed them due to technical difficulties with videoconferencing.  Id.  Counsel also explained that they[2] were particularly susceptible to contracting COVID-19 and that travel remained ill-advised due to the ongoing pandemic.  Id.

---

[2] Bhaskar retained two lawyers to represent him.

This Court granted the motion and adjourned sentencing to October 7, 2020. (Docket No. 55.)  It directed that "if Defendant elects not to consent to proceed by video conference, this sentencing will take place in person . . . and all counsel will be required to attend."  Id.  It further noted that no additional adjournments would be permitted.  Id.

On October 2, 2020, this Court entered a notice advising that the October 7, 2020 sentencing would be conducted remotely.  (Docket No. 70.)  This notice was prompted by communication from defense counsel that Bhaskar consented to proceeding by videoconference.

On October 7, 2020, this Court conducted the scheduled sentencing proceeding using the Zoom for Government videoconference platform.[3]  (Sentencing Transcript ("Sentencing Tr."), Docket No. 84, p. 6; Docket Nos. 71, 72.)  Bhaskar confirmed that he was ready for sentencing, and his lawyers confirmed that they were both ready for sentencing and that they had received the presentence investigation report and reviewed it with Bhaskar.  Id. pp. 4, 5.

Before continuing to sentencing, this Court obtained Bhaskar's consent to proceed remotely.  It first explained that although proceeding by videoconference was both efficient and effective, "if Mr. Bhaskar required or demanded that he be brought into the courtroom itself, arrangements can be made for that, but it would take a little bit of scheduling time to accomplish that."  Id. p. 6.  This Court then reiterated that any consent by Bhaskar must be voluntary, "with no threats or no force to get you to consent."  Id. pp. 6, 7.  When asked whether he was "voluntarily consenting to go forward with sentencing

---

[3] The proceeding was held entirely remotely.  Bhaskar was brought to the federal courthouse but appeared via Zoom from the United States Marshals Service lock-up area.

remotely using this Zoom platform," Bhaskar answered, "Yes."[4]  Id. p. 8.  This Court also confirmed that defense counsel had previously discussed proceeding remotely with Bhaskar.  Id.

Upon hearing that Bhaskar understood his right to reschedule the matter for an in-person sentencing proceeding and had discussed the issue with his lawyers, and upon confirming with Bhaskar that he was voluntarily electing to proceed with the remote sentencing proceeding, this Court found that Bhaskar's consent was knowing and voluntary.  Id. pp. 8, 10.  It later memorialized that finding in an Order, in which it further found that Bhaskar's sentencing could not be further delayed without serious harm to the interests of justice, including interests in finality and the public health and safety.  (Docket No. 72; see also Sentencing Tr., pp. 6, 8-9.)

After obtaining Bhaskar's voluntary consent and explaining other rights, this Court permitted Bhaskar and his lawyers to consult privately in a "breakout room" for as long as they needed.  (Sentencing Tr., pp. 2, 5, 9-11.)  The "breakout room" was a separate virtual session that allowed for confidential attorney-client consultation and discussion, without access by the court, the government, or the public.  Id. p. 12.  When counsel and Bhaskar returned from the "breakout room," this Court specifically advised Bhaskar that he could interrupt or stop the proceeding to seek clarification at any time.[5]  Id. p. 13.

The sentencing proceeding then occurred according to the normal course.

---

[4] The transcript reflects that Bhaskar did not initially hear this Court's inquiry and asked that it be repeated. (Sentencing Tr., p. 7.)  Once repeated, Bhaskar answered in the affirmative that he consented to proceeding by videoconference.  Id. p. 8.

[5] Defense counsel requested another "breakout session" near the end of Bhaskar's sentencing remarks, but Bhaskar declined, opting instead to conclude his remarks.  (Sentencing Tr., pp. 51-52; Bhaskar, 2022 WL 2222477, at *2.)

Defense counsel made an extensive sentencing presentation in support of their request for imposition of the 10-year mandatory minimum sentence, id. pp. 21-42, Bhaskar addressed the court, id. pp. 46-52, and the government advocated for imposition of a 30-year sentence, id. pp. 52-57.  After considering each party's remarks and the extensive sentencing submissions, this Court imposed a 20-year sentence of imprisonment to be followed by 10 years of supervised release.  Id. pp. 61, 65.  The Clerk of Court entered judgment on October 13, 2020.  (Docket No. 73.)

Bhaskar appealed his conviction and sentence through a Notice of Appeal filed on October 14, 2020.  (Docket No. 75.)  On June 21, 2022, the Second Circuit Court of Appeals affirmed the judgment in part and vacated it in part.  See United States v. Bhaskar, No. 20-3537-cr, 2022 WL 2222477 (2d Cir. June 21, 2022) (summary order).  It entered its mandate on September 15, 2022.  (Docket No. 86.)

The Court of Appeals vacated that portion of the judgment that imposed an assessment under the Justice for Victims of Trafficking Act, finding that the record was unclear as to whether Bhaskar was a "non-indigent person" under the Act.  See id. at *3; see also 18 U.S.C. § 3014 (a)(4).  On remand, this Court determined that Bhaskar was not a "non-indigent person" and therefore amended the judgment to eliminate the assessment.  (Docket Nos. 97, 99.)

The Court of Appeals otherwise affirmed Bhaskar's conviction and sentence.  It first found no error in Bhaskar's remote sentencing and instead found that this Court made the requisite findings to proceed remotely and that Bhaskar knowingly and voluntarily consented to the remote proceeding.  Bhaskar, 2022 WL 2222477, at *1-2.  It further found that the remote proceeding did not infringe Bhaskar's right to effective

5

representation by counsel, noting that this Court granted an additional adjournment of sentencing for Bhaskar and his attorneys to confer and further permitted Bhaskar and his attorneys to meet in the "breakout room" at the outset of the sentencing proceeding. Id. at *2. Finally, the Court of Appeals rejected Bhaskar's arguments that the sentence imposed was both procedurally and substantively unreasonable. Id. at *2-3.

Bhaskar thereafter petitioned the Supreme Court of the United States for a writ of certiorari, which it denied on January 9, 2023. See Bhaskar v. United States, __ U.S. __, 143 S. Ct. 623 (Mem), 214 L. Ed. 2d 369 (2023).

One year later, on January 9, 2024, Bhaskar timely filed the instant motion to vacate, set aside, or correct his sentence.[6] (Docket No. 104.) He raises two claims: (1) his consent to proceed with remote sentencing was coerced and involuntary; and (2) he was denied effective assistance of counsel because his attorneys placed their preference for remote sentencing ahead of his preference for an in-person sentencing proceeding. The government responded in opposition on February 23, 2024. (Docket No. 106.) Bhaskar replied on March 13, 2024, at which time this Court took the motion under advisement without oral argument. (Docket No. 107.)

### III. DISCUSSION

**A.     § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences. It provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United

---

[6] A 1-year statute of limitations applies to such motions. See 28 U.S.C. § 2255 (f).

> States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)).  This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur.  See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.  See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.")  This includes

"not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).  This rule also bars ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate. See id. at 53-54 (citations omitted).  An exception to this rule exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual "prejudice" or actual innocence.  See Bousley, 523 U.S. at 622-23 (citations omitted); see also Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.")  This rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal.  See Massaro v. United States,

538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Leave of court is required to engage in discovery, which may be granted for good cause.  See Rule 6 (a).  Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[7]  Id.  The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents."  Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing.  Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]."  Rule 8 (a).  If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A.  See Rule 8 (c).  A hearing is generally warranted only where the petitioner establishes a plausible claim.  See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid

---

[7] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 6 (a).

claims). However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. See, e.g., Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

The petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence. See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

**B.    Bhaskar's Claims**

Bhaskar asserts two grounds for relief in his petition: (1) his consent to proceed with remote sentencing was coerced and involuntary; and (2) he was denied effective assistance of counsel because his attorneys placed their preference for remote sentencing ahead of his preference for an in-person sentencing proceeding. (Docket No. 104-1.) These claims are addressed below.

**1. Bhaskar's consent to proceed with remote sentencing was not coerced or involuntary.**

The Court of Appeals found that Bhaskar knowingly and voluntarily consented to the remote sentencing proceeding. Bhaskar, 2022 WL 2222477, at *1-2. Nonetheless, Bhaskar continues to maintain that his consent was coerced and involuntary, as explained in his 5-page affidavit submitted with the petition. (Docket No. 104-3.)

Bhaskar maintains that beginning in May 2020, he was telling his attorneys that he wanted to be sentenced in person, not remotely, principally because he faced a sentence of up to life imprisonment. (See Affidavit of Sachin Bhaskar ("Bhaskar Aff."), Docket No. 104-3, ¶¶ 6-8.) He claims that he continued to insist on an in-person sentencing in the fall 2020, but after speaking with his attorneys, was confused and under the impression that "the court had determined that [the sentencing] needed to be virtual given that it would permit no additional adjournments." Id. ¶ 9.

As it relates to the sentencing day itself, Bhaskar insists that he was unaware that he would be sentenced and instead thought that his lawyers were going to appear and ask for another adjournment. Id. ¶ 11. He says it was difficult for him to hear the proceedings, especially the explanation of the consent requirement to proceed remotely. Id. ¶ 12. Bhaskar further suggests that he did not learn until after his sentencing that he had the right to be sentenced in person. Id. He also says that he was "confused and felt pressured to say yes as if [he] had no alternative," when asked whether he consented to proceed remotely. Id. ¶ 12.

Bhaskar's affidavit contradicts the record and his own statements at sentencing. First, contrary to the notion that this Court "determined" that the sentencing must be virtual, the record reflects that this Court repeatedly and unequivocally recognized that a virtual proceeding could not be held without Bhaskar's consent. In its second and third adjournment orders, this Court noted that "if Defendant *elects not to consent to proceed by video conference*, this sentencing will take place in the Robert H. Jackson United States Courthouse, and all counsel will be required to attend." (Docket Nos. 53, 55 (emphasis added).) This Court thereafter noted on the docket that the October 7, 2020

11

sentencing proceeding "will be held remotely."  (Docket No. 70.)  But this was not a "determination."  It was a docket notation made for public-notice purposes after receiving word from Bhaskar's counsel that Bhaskar consented to proceed via videoconference. Id. (noting that the proceeding would be held remotely and including public-access information).  This Court never "determined" that Bhaskar's proceeding should be virtual; Bhaskar elected to proceed in that manner.[8]

Second, this Court's designation of adjournments as "final" was not coercive.  Each of the adjournment orders plainly stated that in-person proceedings would occur in the absence of Bhaskar's consent to proceed by videoconference.  (Docket Nos. 53, 55.) Again, at sentencing, this Court advised Bhaskar that he had the right to an in-person sentencing proceeding and informed him that the matter would be rescheduled if that is what he wanted.  (Sentencing Tr., p. 6 (". . . if Mr. Bhaskar required or demanded that he be brought into the courtroom itself, arrangements can be made for that, but it would take a bit of scheduling time to accomplish that.").)  Bhaskar did not exercise that right.  Thus, at no time did this Court coerce Bhaskar's consent to proceed remotely.

Third, Bhaskar's claim that he was unaware that he was going to be sentenced on October 7, 2020, is belied by the record.  At the very beginning of the proceeding, this Court confirmed with both defense counsel and Bhaskar that they were ready for sentencing. Id. p. 4.  Bhaskar also met confidentially with his lawyers in a "breakout room" after the discussion of preliminary matters but before the central sentencing proceeding. Id. pp. 11-12.  After that session, Bhaskar again confirmed that he was ready for

---

[8] While Bhaskar now claims that his lawyers authorized a remote proceeding without his consent, he never disclaimed or withdrew his consent when questioned by this Court, despite having every opportunity to do so.  (See Sentencing Tr., pp. 6-8.)

sentencing.  Id. p. 13.  In addition, Bhaskar indicated during his address to this Court that he was reading from "notes," which indicates that he knew he would be sentenced on October 7 and had prepared for it.[9]  Id. p. 52 ("That's in my notes.").  At no time did Bhaskar express any confusion or misunderstanding as to the nature of the proceeding.

Fourth, Bhaskar's claims that he was unable to hear the proceedings, only learned afterwards that he was entitled to demand an in-person sentencing, and was pressured into consenting to the virtual proceeding are not supported by the record.  After initially confirming that the videoconference equipment was working properly, see id. p. 3, there was but one time that Bhaskar reported being unable to hear: he asked that this Court repeat its question concerning his consent to proceed remotely, see id. p. 7.  Once the question was repeated, Bhaskar had no difficulty understanding or answering it.  Id. Accordingly, but for a single question, Bhaskar's claim that he was unable to hear the sentencing proceedings is unsupported in the record.

Moreover, the notion that Bhaskar learned only after his sentencing that he had the right to demand an in-person proceeding and was pressured into consenting to a virtual one ignores the totality of the record.  This Court not only acknowledged Bhaskar's right in its text orders, see Docket Nos. 53, 55, it fully explained that right to Bhaskar at the beginning of the sentencing proceeding itself.  Deleting extraneous discussion, the exchange was as follows:

Court:    We are proceeding by way of Government Zoom platform, which means, bottom line, is we are proceeding remotely.  And in my judgment that is probably the most efficient and effective way to proceed today, with the understanding that if Mr. Bhaskar required or demanded that

---

[9] Bhaskar's use of notes at sentencing also calls into question his representation that he had not written out a sentencing statement.  See Bhaskar Aff., ¶ 11.

he be brought into the courtroom itself, arrangements can be made for that, but it would take a little bit of scheduling time to accomplish that.

The consent must be a voluntary consent to proceeding by way of this Zoom platform proceeding. I think in some respects it can be more effective and efficient, even than an in-court proceeding.

I believe that the interests of justice will be well served by this proceeding. That it is in the public interest to proceed in this fashion. I find that there is really no prejudice as long as everybody is on board to going forward in this fashion.

. . .

Court:        It takes a little time to work through this, because as you know, [defense counsel] – and, Mr. Bhaskar, this is all for your best interests.

The law requires that I do certain things, so that you know what your rights are. I need consent from you to go forward first with this Zoom proceeding.

And I need to know that you're doing or agreeing voluntarily, with no threats or no force to get you to consent.

Is that something that I can rely on? Is that a fair statement, that you are okay with going forward on Zoom and that you are doing it voluntarily, Mr. Bhaskar?

Bhaskar:      You are talking to me? I couldn't hear that. Hello.

Court:        Yes. Yes. Did you hear what I asked you? Did you hear the question?

Bhaskar:      Can you please repeat the question?

Court:        Sure.    The question is, are you voluntarily

| | | |
|---|---|---|
| | | consenting to go forward with sentencing remotely using this Zoom platform? |
| Bhaskar: | | Yes. |
| Court: | | Okay.  Let me ask you this: Along with that question, have you had any drugs, alcohol or medicine this morning that interferes in any way with your clear thinking in your opinion, as far as this sentencing is concerned? |
| Bhaskar: | | No. |
| . . . | | |
| Court: | | Okay.  With respect to proceeding by Zoom, I do find that there is voluntariness here.  Counsel had discussed with Mr. Bhaskar. |
| | | If that's not accurate, let me know.  [Defense counsel], has that discussion taken place? |
| Counsel: | | Yes. |

Id. pp. 6-8.

The totality of this exchange demonstrates that Bhaskar understood that he had the right to an in-person sentencing proceeding and knowingly waived that right, without any pressure, threat, or coercion.  At no time did Bhaskar state that he could not hear the explanation of his rights nor did he express any misunderstanding as it related to the exercise of those rights.  He asked for one question to be repeated, and when it was, Bhaskar knowingly and voluntarily confirmed his consent to the remote proceeding.  Bhaskar's self-serving affidavit to the contrary does not overcome the presumption of accuracy attributable to his in-court statements.  See United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (noting that statements made in open court carry "such a strong presumption of accuracy that a district court does not, absent a substantial reason to find

otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony"); see also Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); cf. United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (per curiam) (rejecting the defendant's assertion that he did not knowingly waive his right to appeal in his plea agreement because that contention was inconsistent with his statements during the plea colloquy).

Finally, the Second Circuit examined these issues on direct appeal and concluded that "the record shows that Bhaskar knowingly and voluntarily consented to be sentenced by videoconference." Bhaskar, 2022 WL 2222477, at *1. It also rejected Bhaskar's argument that this Court coerced his consent by indicating that it would not grant further sentencing adjournments. See id. at *2. Thus, in addition to failing on the merits, Bhaskar's arguments are barred by the mandate rule. See Yick Man Mui, 614 F.3d at 53; Perez, 129 F.3d at 260.

### 2. Bhaskar did not receive ineffective assistance of counsel.

Bhaskar asserts that he was denied his Sixth Amendment right to effective assistance of counsel because his defense lawyers labored under an actual conflict of interest that caused them to place their own interests in proceeding remotely ahead of his interests in an in-person sentencing proceeding. The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. CONST. amend VI. It is well established that "the right to counsel is the right to the effective assistance of counsel." Eze v.

<u>Senkowski</u>, 321 F.3d 110, 124 (2d Cir. 2003) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

Ineffective-assistance-of-counsel claims may be brought in a collateral proceeding under § 2255 regardless of whether they could have been raised, or were raised, on direct appeal.[10]  <u>See</u> <u>Massaro</u>, 538 U.S. at 508-09.  To succeed on his ineffective-assistance-of-counsel claim, Bhaskar must establish both prongs of the two-part test from <u>Strickland v. Washington</u>: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first <u>Strickland</u> prong, Bhaskar must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance."  <u>Id.</u> at 688, 690.  Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'"  <u>Aparicio v. Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 689).  This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  <u>Strickland</u>, 466 U.S. at 689 (internal citation omitted).  The question is ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most

---

[10] As noted above, however, the mandate rule still applies.  That is, ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, and any claims involving factual predicates that were impliedly rejected on direct appeal, are barred.  <u>See</u> <u>Yick Man Mui</u>, 614 F.3d at 53-54 (citations omitted).

common custom." Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second Strickland prong, Bhaskar must establish that his attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 687, 694. The Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," Strickland, 466 U.S. at 693. In the sentencing context, a showing must be made that but for counsel's errors, there is a reasonable probability that the result of sentencing would have been different, that is, that a lesser sentence would have been imposed. See United States v. Workman, 110 F.3d 915, 920 (2d Cir. 1997).

Bhaskar claims that his attorneys labored under an actual conflict of interest that adversely affected their performance at sentencing to his material detriment. The government maintains that no actual conflict existed and that Bhaskar received effective representation.

It is axiomatic that the Sixth Amendment right to counsel entails "a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) (citations omitted); United States v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002) ("A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel.") (internal quotation marks and citation omitted). The Sixth Amendment right is

therefore violated if an attorney had "(1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994) (citations omitted).  Prejudice under the second Strickland prong is presumed upon demonstration of an actual conflict of interest that adversely affected the attorney's performance.  See Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); Armienti v. United States, 234 F.3d 820, 824 (2d Cir. 2000).

An actual conflict exists "when, during the course of representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler, 446 U.S. at 356 n. 3).  To demonstrate an actual conflict, the defendant must establish a viable "plausible alternative defense strategy not taken up by counsel." United States v. Moree, 220 F.3d 65, 69 (2d Cir. 2000) (internal quotation marks and citations omitted).  The defendant must then show that counsel's other loyalties or interests (i.e. the actual conflict) caused counsel to not undertake the alternative defense strategy.  See Winkler, 7 F.3d at 309.

Bhaskar maintains that his lawyers labored under an actual conflict of interest because they placed their fear of travelling during the COVID-19 pandemic ahead of his desire to exercise his right to be sentenced in person.  Bhaskar points to his lawyers' adjournment motions, wherein they several times express their reluctance to travel from New York City to Buffalo.  (See Docket Nos. 48, 52 (both seeking adjournments, in part, because the pandemic precluded "being able to safely travel and appear in Court on the current sentence date"); Docket No. 54 (seeking an adjournment, in part, on the basis

19

that "[a]s we are still in the midst of the COVID-19 pandemic, travel is simply not advisable, as Mr. Pittell and I are in a potentially vulnerable age group.  Further, Mr. Pittell's nearly seventeen-year [medical condition] makes him particularly vulnerable to infection.").)  He also notes that counsel at one point expressed their preference for in-person sentencing: "Although sentencing proceedings may occur by video-teleconference, in this case, where there has been an open plea to the Indictment - - and the PSR calculates the advisory Sentencing Guideline range to be life - - it is our preference that sentencing occur in person."  (Docket No. 52.)

Bhaskar argues that his lawyers' fear of travelling during the pandemic created an unresolved conflict of interest because it trumped his wishes to be sentenced in person. He further argues that "[t]his conflict—counsel's on-the-record fear of travel and simultaneous indication that the defendant would be best served by an in-person sentencing—was never resolved and violated his right to conflict-free representation." (Memorandum of Law, Docket No. 104-1, p. 21.)  Additionally, Bhaskar maintains that he was never consulted on the decision to proceed with a virtual sentencing.

Bhaskar's arguments are unpersuasive.  As noted above, Bhaskar's after-the-fact contentions do not overcome the presumption of accuracy attributable to his in-court statements.  His claims that he at all times insisted on an in-person sentencing proceeding and that his lawyers consented to a virtual proceeding without his knowledge are belied by the record, which establishes that Bhaskar understood his right to insist on an in-person proceeding, discussed that right with his lawyers, and knowingly and voluntarily waived that right.  (See Sentencing Tr., pp. 6-8; Bhaskar, 2022 WL 2222477, at *1.)  The notion that Bhaskar was dissatisfied with his lawyer or that counsel overrode Bhaskar's

wishes in favor of their own is further debunked by Bhaskar thanking his lawyers for their support and singling one out for "spen[ding] a lot of time on my case and I would like to thank her a lot for helping me throughout the case and to bring about a resolve to this case." (Sentencing Tr., p. 49.)  In short, Bhaskar understood his rights and had every opportunity at sentencing to insist on an in-person proceeding, with this Court even offering to reschedule the matter if that was his election.  Id. p. 6.  Instead, Bhaskar knowingly and voluntarily consented to a virtual sentencing without equivocation.

Moreover, the record does not support Bhaskar's suggestion that his lawyers refused to travel to the courthouse for sentencing.  Rather, counsel included the risks of traveling during the pandemic as one reason supporting their adjournment requests. Those same requests were further premised on the need for additional time to complete sentencing submissions and to review those submissions with Bhaskar.  (See Docket Nos. 48, 52 (each seeking adjournment, in part, based on the need for more time to prepare sentencing submissions); Docket No. 54 (seeking adjournment, in part, based on the need for additional time to review sentencing submission with Bhaskar).)  Even counsels' last adjournment request continued to contemplate an in-person proceeding, since only a 10-day delay was requested to permit counsel to review their sentencing submission with Bhaskar.  (See Docket No. 54.)  The record shows that Bhaskar thereafter consented to the virtual proceeding, with counsel advising this Court accordingly.  (See Sentencing Tr., pp. 6-8; see also Docket No. 70.)  At no time did Bhaskar disclaim or withdraw that consent.

Bhaskar has failed to demonstrate materially diverging interests between himself and his attorneys.  See Winkler, 7 F.3d at 307.  Whatever regrets Bhaskar may have

about consenting to a remote proceeding do not detract from the voluntariness of that consent, made after consultation with counsel. Bhaskar therefore fails to establish an actual conflict.

Furthermore, Bhaskar was not prejudiced by the virtual proceeding. This Court conducted the proceeding as it would any other sentencing, with defense counsel and Bhaskar having a full and complete opportunity to address the court. Although Bhaskar now maintains that he was unprepared, he twice stated on the record that he was ready for sentencing; he spoke from prepared notes; and he had an unlimited opportunity to meet with counsel in a "breakout room" and in fact did so for some time. (See Sentencing Tr., pp. 2, 4, 5, 11-12, 13, 52.) And while Bhaskar correctly notes that this Court questioned the genuineness of his remorse, nothing submitted establishes that Bhaskar's expression of remorse or overall sentencing remarks would have been any more compelling or different if made in person with his attorneys present.[11] Id. p. 59. Bhaskar faced a maximum sentence of life imprisonment and was sentenced to the reduced term of 20 years. Appearing in person, rather than remotely, would not have changed that outcome. Bhaskar therefore fails to establish prejudice under Strickland. See Workman, 110 F.3d at 920 (requiring a showing that a lesser sentence would have been imposed to establish prejudice).

Finally, it must again be noted that the Second Circuit rejected Bhaskar's claim that he was denied effective representation simply because the sentencing took place

---

[11] Bhaskar insists that he was prejudiced by not having counsel physically by his side, because they could have assisted "with the issues that arose while he was addressing the Court." (Memorandum of Law, Docket No. 107, p. 2.) Yet when his lawyers urged Bhaskar to enter a confidential breakout room during his remarks, presumably to assist him, Bhaskar flatly declined. (See Sentencing Tr., pp. 50-51.) Moreover, counsel were equally as free to address this Court's sentencing comments in the virtual setting as they would have been during an in-court proceeding. The virtual sentencing thus did not prejudice Bhaskar.

remotely.  Bhaskar, 2022 WL 2222477, at *2.  Construing the claim as one asserting that the remote nature of the proceeding impaired Bhaskar's defense, the court rejected it, instead finding that this Court facilitated discussions between Bhaskar and his lawyers by granting adjournments and providing the "breakout room," that Bhaskar never raised any communication issues involving his lawyers, and all parties had the opportunity to address the Court.  See id.  Thus, in addition to failing on the merits, some of Bhaskar's ineffective-assistance-of-counsel arguments are also barred by the mandate rule.  See Yick Man Mui, 614 F.3d at 53; Perez, 129 F.3d at 260.

**C.    No evidentiary hearing is required.**

Bhaskar requests a hearing on his petition.  (See Memorandum of Law, Docket No. 107, p. 11.)  As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, no evidentiary hearing is required because the motion and the record conclusively demonstrate that Bhaskar is entitled to no relief under § 2255.  Consequently, this Court finds that no hearing is warranted or required.  See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

**D.    A certificate of appealability will not issue.**

For a certificate of appealability to issue, a petitioner must make a "substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To make the required "substantial showing," Bhaskar must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted). Bhaskar has made no such substantial showing of the denial of a constitutional right in this case. A certificate of appealability will therefore not issue.

## IV. CONCLUSION

Having considered Bhaskar's grounds for relief individually and cumulatively, and having presided over the sentencing of this matter, with opportunity to observe defense counsel first-hand, this Court finds that Bhaskar has failed to carry his burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment" or to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Harrington, 562 U.S. at 104 (quotations and citations omitted). He has also failed to show that portions of his claims are not barred by the mandate rule. Consequently, Bhaskar's § 2255 motion must be denied.

If Bhaskar wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action. See Fed. R. App. P. 4 (a)(1)(B)(i). Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. § 2255 (Docket No. 104) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 24-CV-39S.

SO ORDERED.


Dated:        February 19, 2025
              Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge